JUDITH A. HALEY, Plaintiff, v. KEITH J. POSDAL, Defendant and Third-Party Plaintiff-Appellant (Illinois Farmers Insurance Company, as Subrogee of Judith A. Haley, Plaintiff-Appellant; Tate Haley, Defendant-Appellee and Third-Party Defendant-Appellee).

Second District   Nos. 2—89—0906, 2—89—0968 cons.

Opinion filed August 28, 1990.

964

D. Kendall Griffith and Stephen R. Swofford, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Bruce L. Carmen, of counsel), for appellant Illinois Farmers Insurance Company.

James T. Ferrini and Thomas H. Ryerson, both of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago, Carl F. Schroeder, of Carl F. Schroeder, Ltd., of Wheaton, and Puckett, Barnett, Larson, Mickey, Wilson & Ochsenschlager, of Aurora (Sonia V. Odarczenko and John R. Wienold, of counsel), for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Two appeals arising from the same automobile accident have been consolidated for review by this court. Illinois Farmers Insurance Company (Farmers) appeals from a trial court order dismissing its subrogation action against Tate Haley (Tate). Keith Posdal (Posdal) appeals from a trial court order dismissing his claim for contribution from Tate. A review of the parties and the pleadings is necessary for a complete understanding of the issues involved in this appeal.

On November 7, 1986, Judith Haley (Haley) and Judith Allport (Allport) were passengers in an automobile driven by Haley's son, Tate, when it was involved in a collision with an automobile driven by Posdal. The following actions emanated from that collision:

1. Haley and Allport v. Posdal (for personal injuries);

2. Posdal v. Tate (for personal injuries, property damage);

3. Haley v. Tate (for personal injuries); and

4. Farmers, as subrogee of Haley v. Posdal and Tate (subrogation action).

In the Haley suit, Posdal was represented by the law firm of Clausen, Miller, Gorman, Caffrey & Witous, P.C. (Clausen Miller), which also filed a contribution action on Posdal's behalf against Tate in the Haley suit. In Posdal's action against Tate, Posdal was represented by attorney Richard Levin (Levin).

APPEAL NO. 2—89—0906

Haley had a policy of insurance with Farmers which covered her for injuries caused by underinsured motorists. That policy provided in pertinent part as follows:

"In the event of any payment under this policy, we are entitled to all the rights of recovery of the person to whom payment

was made against another. That person must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights and do nothing after loss to prejudice our rights. When a person has been paid *damages* [emphasis in original] by us under this policy and also recovers from another, the amount recovered from the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment."

Haley made an underinsured motorist claim against Farmers because Posdal had only $15,000 in liability insurance. Farmers initially paid Haley $15,000 and then was granted leave to intervene as a party plaintiff in the suit filed by Haley against Posdal. Farmers sued in subrogation to recover the $15,000 paid to Haley. Count I of the suit sought recovery from Posdal, and count II sought recovery from Tate.

Tate moved to dismiss count II of Farmer's subrogation action, arguing that Farmers could only subrogate against the underinsured motorist, Posdal. Farmers relied on the above-cited language in Haley's policy. On September 27, 1988, the trial court granted Tate's motion and dismissed count II of the subrogation action with prejudice.

On October 7, 1988, Haley filed her own action for personal injuries against her son, Tate. On October 13, 1988, upon receiving the additional sum of $125,000 from Farmers, Haley released her claim against Farmers. The release stated in pertinent part as follows:

"The undersigned hereby assigns, transfers and sets over to [Farmers] any and all claim or causes of action for bodily injury which the undersigned now has, or may hereafter have, to recover against any person or persons as the result of said accident and loss above stated to the extent of the payment made above; the undersigned agrees that [Farmers] may enforce the same in such manner as shall be necessary or appropriate for the use and benefit of [Farmers], either in its own name or in the name of the undersigned."

After the trial court denied its motion to reconsider the dismissal of its subrogation claim against Tate, Farmers filed an amended complaint against Posdal (count I) and Tate (count II), alleging a total payment to Haley of $140,000. Tate's motion to dismiss was again granted with prejudice. Haley then moved to voluntarily dismiss her suits against Posdal and Tate, and Farmers moved to dismiss the remaining count of its subrogation action which was against Posdal. Both motions were granted, and notices of appeal were filed. After it was discovered that Allport's suit against Posdal, which had been set-

tled, had not been dismissed, an order was entered dismissing Alport's lawsuit. New notices of appeal were filed.

On appeal, Farmers contends that the trial court erred in dismissing the subrogation action as to Tate. Farmers argues that under policy provisions dealing with underinsured motorist coverage, it may recover the $140,000 paid out to Haley from Tate even though he was not the underinsured motorist. Tate argues that the release signed by Haley was in actuality an assignment of her cause of action for personal injuries, which, in fact, are nonassignable under Illinois law, rather than a subrogation action as Farmers maintains.

In *Remsen v. Midway Liquors, Inc.* (1961), 30 Ill. App. 2d 132, 143-44, the court noted the differences between "subrogation" and "assignment," stating:

"Subrogation presupposes an actual payment and satisfaction of the debt or claim to which the party is subrogated, although the remedy is kept alive in equity for the benefit of the one who made the payment under circumstances entitling him to contribution or indemnity while assignment necessarily contemplates the continued existence of the debt or claim assigned. Subrogation operates only to secure contribution and indemnity, whereas an assignment transfers the whole claim."

Farmers relies heavily on *Remsen*. In that case, as a result of a fatal automobile collision with an uninsured motorist, the administrator and the decedent's widow initiated a dramshop action against Midway Liquors, Inc. (Midway), and Town Hall Tavern (Town). The estate and widow settled with Midway and Town, and Employers Mutual Liberty Insurance Company (Employers) intervened on the basis that it had paid monies to the administrator and the widow under the uninsured motorist provision of the decedent's insurance policy with Employers and that the releases were signed by the administrator and the widow. The trial court held that Employers was entitled to be reimbursed from the settlement monies. The administrator and the widow appealed.

On review, the court commented:

"Under the uninsured motorists endorsement the insurance company agrees to pay the insured all sums that he shall be legally entitled to recover as damages for bodily injury sustained by accident arising out of the ownership, maintenance and use of an insured automobile.

In the event of payment to any person under the subject endorsement the policy provides by its endorsement conditions entitled 'Trust Agreement' that the company shall be entitled

to the *extent* of such payment to the *proceeds* of any settlement or judgment that may result from the exercise of any *right of recovery* of such person against *any person or organization* legally responsible for the bodily injury because of which such payment is made, and further provides that the person receiving payment shall execute and deliver to the company such instruments as may be appropriate to secure the rights and obligations of such person and the company." (Emphasis in original.) *Remsen*, 30 Ill. App. 2d at 142.

The *Remsen* court concluded that the "trust agreement" was one of subrogation not assignment and was, therefore, not void on that basis. The decision of the trial court was affirmed. Thus, as Farmers is attempting to do here, the insurance company was able to recoup its monies from a party other than the uninsured or, as in the case before us, the underinsured motorist.

█▌ █ We are of the opinion that *Remsen* is distinguishable from the case at bar. We believe, first, that unlike the "trust agreement" in *Remsen*, the release executed by Haley in the present case is an assignment of a bodily injury claim and is, therefore, void. (See *Remsen*, 30 Ill. App. 2d at 144.) " 'An advance by insurer of the amount of insurance to insured, under a loan agreement reciting that the amount was received as a loan to be repaid only from such recovery as might be had from a third person, does not constitute an assignment ***.' " (*Remsen*, 30 Ill. App. 2d at 145, quoting from 46 C.J.S. *Insurance* §1209(1)(c), at 156 (1946).) Put another way, where the language in the release "assigns" the claim or cause of action to the insurer without the necessity of recovery, an assignment rather than a subrogation exists.

In the case before us, the use of the term "assigns" plus the absence of any recovery by Haley against Tate (due, of course, to the fact that Haley dismissed her suit against Tate) establishes an assignment not a subrogation action. In contrast, in *Remsen*, the parties received monies from the settlement with the dramshop defendants.

The other cases relied on by Farmers are likewise distinguishable from the case at bar. In *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, the insurance company sought subrogation of monies recovered. In *Ackermann v. Prudential Property & Casualty Insurance Co.* (1980), 83 Ill. App. 3d 590, again the insurance company was entitled to reimbursement from either the uninsured motorist or the other driver, if a recovery was made.

█▌ We conclude that the trial court did not err in granting Tate's motion to dismiss Farmer's subrogation action as to him. Concluding

as we do, we need not reach Farmer's argument as to the effect of section 143a—2(7) of the Illinois Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(7)) on subrogation actions.

APPEAL NO. 2—89—0968

Posdal, represented by Clausen Miller, had filed a contribution action against Tate in the Haley suit. Posdal had also filed a suit for personal injuries and property damage against Tate in which he was represented by Levin.

Posdal settled his suit for personal injuries and property damage against Tate and executed a "release of all claims" document. The release provided in pertinent part as follows:

"I *** do hereby release, acquit and forever discharge Tate J. Haley and Country Mutual Insurance Company of and from any and all actions, causes of action, claims, demands, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting or to result from an accident that occurred on or about the 7th day of November 1986."

A subsequent provision of the release stated in pertinent part as follows:

"It is mutually understood and agreed that this settlement is the compromise of a doubtful and disputed claim."

Tate then moved to dismiss Posdal's contribution action against him on the basis of the release Posdal had executed. In response, Posdal argued that the release did not expressly release the contribution claim and that it was not the intent of the parties to release the contribution claim. Posdal argued further that the language of the release clearly released only those actions arising out of personal injuries and property damage. Finally, Posdal argued that no notice of the proposed settlement was given to Clausen Miller as Posdal's attorneys on the contribution action. Posdal's response was supported by his own affidavit and that of Levin, both of which stated that there was no intent to release the contribution action. Following argument, the trial court dismissed Posdal's action for contribution against Tate, as well as Posdal's action for personal injuries and property damage against Tate. Posdal timely appeals from the dismissal of his action for contribution.

On appeal, Posdal contends that the trial court erred in dismissing his action for contribution from Tate. Posdal argues that it was not his intention to include the contribution claim within the purview of

the release and that the language of the release itself does not encompass the contribution claim. He points out that the release specifically refers to "personal injuries and property damage" as the claims which are being released.

In dismissing the contribution claim, the trial court relied on *Rakowski v. Lucente* (1984), 104 Ill. 2d 317. In that case, following an automobile accident, Lucente, one of the drivers, executed a general release in favor of Rakowski, the other driver. Rakowski and his two passengers then sued Lucente for personal injuries suffered in the accident. Lucente counterclaimed against Rakowski seeking contribution for the injuries sustained by the passengers. Rakowski moved to dismiss the contribution claim on the basis that it was barred by the general release. In opposition to the motion, Lucente filed an affidavit stating that he did not intend to give up his right to seek contribution from Rakowski. The trial court dismissed the claim for contribution, and the appellate court affirmed.

The supreme court affirmed the dismissal of the contribution claim. The court examined the language of the general release which provided in pertinent part as follows:

" '[T]he undersigned hereby releases and forever discharges Leo Rakowski, his heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, *from any and all claims, demands, damages, actions, causes of actions or suits of any kind or nature whatsoever*, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 7th day of Sept., 1981 ***.
\*\*\*

Undersigned hereby declares that the terms of this settlement have been *** voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned ***.' " (Emphasis in original.) 104 Ill. 2d at 319-20.

In determining that the contribution action was within the scope of the general release, the court first noted that the language of the release was "comprehensive, precise and unambiguous." (104 Ill. 2d at 323.) The court further noted that where a written contract is in evidence, the parties' intentions must be determined from the con-

tract, not what the parties thought. (*Rakowski*, 104 Ill. 2d at 323, quoting from *Saddler v. National Bank* (1949), 403 Ill. 218, 228.) The court then stated as follows:

> "The claims to be released are described in comprehensive language as 'any and all claims, demands, damages, actions, causes of action or suits of any kind or nature \*\*\*, and particularly on account of all injuries, known and unknown, \*\*\* which have resulted or may in the future develop from an accident which occurred.' There is no basis for Lucente's argument that the release did not include a specific type of action, that is, his right against Rakowski for contribution, because that action was not expressly enumerated. When employing a release as broad as the one used here, any attempt to list the specific types of action included in the release might have detracted from its broad and general scope." (104 Ill. 2d at 323.)

Therefore, regardless of what Posdal's intent was, as evidenced by his affidavit and that of his attorney, Levin, the language of the contract determines whether the release in this case encompassed the contribution claim.

Posdal argues that *Rakowski* is factually inopposite to the case at bar. He points out that the language of the Posdal release does not release actions or suits "of any kind or nature whatsoever" arising from the accident. Rather, he maintains, it releases only those claims "on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage." Posdal further points out that the stated purpose of the Posdal release was the "compromise of a doubtful and disputed claim." According to Posdal, the use of the word "claim" in the singular is indicative of the fact that the separate contribution claim was not a part of this release. Finally, Posdal notes that, unlike the release in *Rakowski*, the Posdal release makes no representation whatsoever that its express purpose is to preclude forever any further claims.

■ We see very little difference between the language used in *Rakowski* and that used in the case before us. Nothing in *Rakowski* requires that exact same language to be used when drafting a release that will be deemed general enough so as not to require that the claims be specifically identified before they will be considered encompassed by the release. Moreover the language in the Posdal release "release, acquit and forever discharge \*\*\* from any and all actions, causes of action, claims \*\*\* on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage" clearly indicates that the contribution claim was encom-

passed by the Posdal release. The contribution action was a "cause of action" which grew out of the personal injuries suffered by Haley in the accident of November 7, 1986. Posdal's argument as to the use of the singular "claim" is not persuasive since Posdal himself had made "claims," *i.e.*, for personal injuries *and* property damage. Finally, we note that although the release in *Rakowski* "specifically" referred to personal injuries and property damage, this did not put the contribution action beyond the purview of the release.

We have examined the cases relied on by Posdal, namely, *Ahn Brothers, Inc. v. Buttitta* (1986), 143 Ill. App. 3d 353, *Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, and *Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, *appeal after remand* (1987), 158 Ill. App. 3d 639, and determined, in light of the above discussion, that they are either inapplicable or distinguishable from the case at bar.

Posdal also argues that the decision in *Rakowski v. Lucente* deviates from the supreme court's prior decision in *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196. In *Alsup*, the court held that a release does not cover a joint tort-feasor not specifically identified in the release. (101 Ill. 2d at 201.) The *Rakowski* court acknowledged the above holding in *Alsup* but concluded that nothing in *Alsup* required that a claim, particularly one for contribution, had to be individually and specifically described to be released. Further, *Alsup* dealt with section 2(c) of the Contribution Act (Ill. Rev. Stat. 1979, ch. 70, par. 302(c)), which was not an issue in *Rakowski*. Therefore, we reject Posdal's position that *Rakowski* must be narrowly read in light of *Alsup*.

Next Posdal argues that Tate's counsel's failure to notify Clausen Miller of the negotiations precludes release of the contribution claim.

■ Posdal's reliance on *Kazale v. Kar-Lee Flowers* (1989), 185 Ill. App. 3d 224, is misplaced. In *Kazale*, this court reversed a trial court order enforcing a settlement agreement. This court found that defendant failed to prove that plaintiff's attorney had authority to enter into a settlement on her behalf. In the case before us, Posdal attacks Tate's attorney for failing to notify Posdal's *other counsel*, Clausen Miller, of the release and the negotiations which led up to it. However, no issue has been raised as to Levin's authority to enter into the release. Nowhere in his affidavit does Levin state that he was not authorized to settle Posdal's action against Tate. In fact, unlike *Kazale*, Posdal does not seek to set aside the settlement but only the effect of the release signed in conjunction with that settlement.

Posdal also relies on *Home Insurance Co. v. Hertz Corp.* (1978),

71 Ill. 2d 210. In that case, our supreme court reversed a line of appellate authority and held that a general release by an insured of all claims against a tort-feasor does not bar the subrogation action by an insurer-subrogee against that tort-feasor, where the tort-feasor procures the release from the injured-subrogor with knowledge of the insurer's interest. (See also *Country Mutual Insurance Co. v. Transit Casualty Co.* (1978), 59 Ill. App. 3d 283.) Posdal concedes that *Home* is not dispositive of the issue before us but contends that its reasoning in that decision has a direct bearing on it. In *Home,* the supreme court reasoned that the prior rule permitted the tort-feasor and his own liability insurer to escape payment while the tort victim was effectively denied payment from his own carrier and the tort-feasor. The court stated in pertinent part:

> "The *Andersen* rule in these circumstances constitutes a trap for the unwary insured plaintiff. While no fraud is alleged here, the rule itself encourages fraud or, at the very least, sharp practice on the part of the tortfeasor or his insurance carrier. The insured may be an unsophisticated, unrepresented party presented with a full and final release which he is told he must sign in order to effect a needed settlement. To require him to execute a release of all claims, even though the tortfeasor has knowledge at the insurer's interest and the probable existence of a standard insurance policy provision obligating the insured to protect the insurer's subrogation rights, is simply not consistent with fair dealing and ought not to be encouraged." (*Home Insurance,* 71 Ill. 2d at 214.)

In the case at bar, Posdal was not "an unrepresented party" as envisioned by the *Home* court. Quite the contrary, he was represented by counsel and entered into a settlement agreement which he does not seek to overturn on the basis his attorney did not have authority to settle the case. Moreover, the decision in *Rakowski v. Lucente* had been the law for several years prior to Posdal's execution of the release in this case, so that if Posdal and Levin had intended not to release the contribution claim, the appropriate language could have been inserted in the release.

Finally, Posdal argues that the fact that Tate's attorneys negotiated the settlement agreement of Posdal's personal injury and property damage suit without contacting Clausen Miller and their failure to petition the trial court for a finding of a good-faith settlement evidences their knowledge that Levin was attempting to negotiate only the personal injury and property damage claims. However, nothing in the Contribution Act automatically requires Tate to seek a finding as

to a good-faith settlement. We will not speculate as to why Tate did not do so in this case. Further, nowhere in the affidavit of either Posdal or Levin does it state Levin only had authority to negotiate the personal injury and property damage claims. Their sole claim is that they did not intend for the contribution claim to be included in the release. However, we have already determined the language in the release reflects their intent to release the contribution claim as well.

■ We conclude, therefore, that the trial court did not err in granting Tate's motion to dismiss Posdal's claim for contribution against Tate.

The judgment of the circuit court in case No. 87—L—0298 is affirmed; the judgment of the circuit court in case No. 88—L—1792 is affirmed.

Affirmed.

INGLIS and GEIGER, JJ., concur.