(No. 37684.— ▮▮▮▮▮▮▮)

FRANK ROSENBERG, INC., *et al.*, Appellants, *vs.* CARSON PIRIE SCOTT & CO., *et al.*, Appellees.

*Opinion filed September 27, 1963.*

SIDNEY D. DAVIDSON and JOHN F. SLOAN, of Peoria, for appellants.

HAROLD H. KUHFUSS, of Pekin, for appellees the Kerasotes.

RICHARD H. RADLEY and DAVIS, MORGAN & WITHERELL, both of Peoria, and WILLIAM B. GARRETT, of Chicago, for appellees Carson Pirie Scott & Co., John T. Connors, and Joseph S. Ehrman.

EDWIN V. CHAMPION and ARTHUR B. COPELAND, both of Peoria, for appellee McGrath Sand and Gravel Co.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

In this action the plaintiffs seek specific performance of separate agreements concerning the sale of two tracts of land, or alternatively, damages for breach of the agreements. The circuit court of Tazewell County entered a decree allowing motions for summary judgment for the defendants and the plaintiffs have appealed directly to this court. A freehold is involved.

The two parcels of land are adjacent, and both have been acquired by Carson Pirie Scott & Co. for the construction of a shopping center. While there is much in the arguments of the parties that is common to both tracts, there

are significant differences both in the operative facts and in the applicable legal doctrines. We shall therefore discuss each tract separately.

## The McGrath Parcel

In the causes of action relating to this parcel the plaintiffs are Bernard J. Rosenberg and two corporations of which he was president, Frank Rosenberg, Inc., and Lakeview Cemetery Association. The defendants are McGrath Sand and Gravel Co. and Carson Pirie Scott & Co., both corporations, and two individuals, John T. Connors, Jr. and Joseph S. Ehrman, Jr.

The following undisputed facts appear from the pleadings and the affidavits in support of and in opposition to the motions for summary judgment. On March 16, 1942, Lakeview Cemetery Association, (Lakeview), and McGrath Sand and Gravel Company, (McGrath), entered into a contract for the exchange of two tracts of land. The contract provided that in excavating sand and gravel McGrath would leave such lateral support that Lakeview's land would not be damaged. It also granted McGrath an option to purchase from Lakeview a third tract, known as lots 12 and 13, and it provided that in the event McGrath should exercise the option it would not sell the property so acquired to any person or persons for cemetery purposes and that if it sold the land, the deed of conveyance would carry a restriction against a sale by the grantee for cemetery purposes. The contract further contained the provision upon which the plaintiffs base their present claims, that Lakeview "shall have the first refusal in case of sale of any property in this paragraph described." The contract was recorded on March 17, 1942. On June 29, 1945, McGrath exercised its option to purchase lots 12 and 13 from Lakeview.

McGrath sold certain of the land described in the contract to Veterans Memorial Cemetery Association, and

Lakeview, Frank Rosenberg, Inc. and Bernard J. Rosenberg brought an action against McGrath to recover damages for this breach of the contract. The case was settled in November of 1959. McGrath paid $4000 and Frank Rosenberg, Inc., and Lakeview executed a release, the terms of which will be described.

On December 16, 1960, Lakeview assigned all its rights under the McGrath contract to Frank Rosenberg, Inc., and on May 1, 1961, Lakeview was dissolved. On March 24, 1961, McGrath conveyed lots 12 and 13 to John T. Connors, Jr., without first offering to sell the property to Lakeview or Frank Rosenberg, Inc. On April 20, 1961, Connors conveyed the property to Joseph S. Ehrman, Jr., who holds title for Carson Pirie Scott & Co. (Carsons.).

The complaint in the present case was filed on November 3, 1961. It asserted that the plaintiffs desired to exercise the right of first refusal granted by the contract, and were ready, willing and able to do so. It prayed "that a decree of specific performance be entered against defendants or such of them as are found to hold legal and beneficial interests in said property" and, in the alternative, it sought damages for breach of contract in the amount of $200,000 in favor of each of the three plaintiffs.

The arguments based upon the undisputed facts have taken a wide range. The defendants assert that the plaintiffs' rights are barred by the release, that the first refusal provision of the contract violates the rule against perpetuities, and that it is also invalid as an unreasonable restraint upon alienation. The plaintiffs assert the validity of the right of first refusal and its enforceability, and they contend that the release given to McGrath did not extend to subsequent breaches of the contract relating to the right of first refusal.

As we view the case it is necessary to consider only one of the issues thus tendered by the parties. We are of the opinion that the release which was executed by both Lake-

view and Frank Rosenberg, Inc., had the effect of eliminating the first refusal provision of the contract. The first paragraph of the release acknowledged the receipt of $4,000 and in general terms recited that in consideration therefor Lakeview Cemetery Association and Frank Rosenberg, Inc., released and discharged McGrath from any action, claim or demand, accrued or to accrue. The second paragraph released and discharged McGrath from any claims asserted in the then pending action which was identified by title and number. The release continued:

"Also of and from any and all claims which have, in the past, arisen or may, in the future, arise or, in any way, grow out of any alleged breach or breaches by McGRATH SAND AND GRAVEL COMPANY, a Corporation, of a certain contract entered into between McGRATH SAND AND GRAVEL COMPANY, a Corporation, and LAKEVIEW CEMETERY ASSOCIATION; a Corporation, * * * by the terms of which contract, among other provisions thereof, the last mentioned parties thereto agreed to and later, in pursuance thereto, exchanged certain real-estate therein described and which contract was recorded.

"It is expressly understood, however, that the only two provisions of said contract referred to and described in the last preceding paragraph of this Release excepted from this Release are:

"*First* The provisions therein, that McGRATH SAND AND GRAVEL COMPANY, a Corporation, * * * would not sell or convey any part of said lands in the contract mentioned, other than to LAKEVIEW CEMETERY ASSOCIATION, a Corporation, for cemetery purposes and that if any sale of said lands by McGRATH SAND AND GRAVEL COMPANY, a Corporation, is made, such Deed of conveyance would carry with it a restriction of the use of said property for cemetery purposes. The Release is intended to and does, by its terms, release McGRATH SAND AND GRAVEL COMPANY, a Corporation, from any and all claims for damages arising from any alleged breach or breaches caused by any conveyance by it of said lands described in said paragraph prior to the date of this Release. However, said restriction, last mentioned above in said contract referred to, shall continue and be in effect, as to any conveyance of land in said contract described by McGRATH SAND AND GRAVEL COMPANY, a Corporation, which occurs subsequent to the date of this Release; and

"*Second* The provision in said Contract last mentioned, which provides that McGRATH SAND AND GRAVEL COMPANY, a Corpora-

tion, in pursuing its graveling operation of the premises acquired by it under said contract, shall mine or take from said ground only as close to the premises of the LAKEVIEW CEMETERY ASSOCIATION, a Corporation, as will leave sufficient lateral support for the land of LAKEVIEW CEMETERY ASSOCIATION, a Corporation, in order that said land of LAKEVIEW CEMETERY ASSOCIATION, a Corporation, shall not be damaged by reason of any such excavation and as to this latter provision in said contract referred to, the undersigned, LAKEVIEW CEMETERY ASSOCIATION, a Corporation, and FRANK ROSENBERG, INC., a Corporation, hearby release any claim for damages for any alleged breach, resulting from any act or thing done by MCGRATH SAND AND GRAVEL COMPANY, a Corporation, prior to the date of this Release. However, said provision in said contract referred to as to lateral support shall continue and be in effect as to any excavations referred to in said contract by MCGRATH SAND AND GRAVEL COMPANY, a Corporation, which are made subsequent to the date of this Release."

In our opinion the effect of the quoted language of the release was to discharge McGrath from all obligations under the contract between Lakeview and McGrath except the two provisions of the contract that were specifically excluded from the operation of the release.

The plaintiffs contend that the language of the release does not express an intent to eliminate the right of first refusal. They ask, "If the release in this case had been intended to release the right of first refusal why did it not simply say: 'The undersigned hereby release their right of first refusal contained in the contract dated March 14, [sic] 1942.'" Certainly the language thus suggested would have eliminated the right of first refusal, but that language is not the exclusive formula by which that result could be accomplished. The language actually used was equally effective. It specifically released and discharged all claims, past or future, arising out of the contract, with the exception of the two provisions expressly excluded from the operation of the release.

The effect of the language used in the release is not diluted by the affidavit of the attorney who represented the plaintiffs in their action against McGrath. Accepted at its

full face value, that affidavit, submitted by the plaintiffs in opposition to the motion for summary judgment, stated no more than that the matter of Lakeview's right of first refusal was not mentioned in the settlement negotiations. We do not agree with the plaintiffs' assertion that "The provisions relating to the two exceptions confuse the situation and create some ambiguity." Rather we think that those provisions are clear and explicit, and that extrinsic evidence is not admissible to vary them.

Summary judgment was properly entered for the defendants with respect to the McGrath parcel.

### The Kerasotes Parcel

In the causes of action relating to this parcel the plaintiffs are Bernard J. Rosenberg and Frank Rosenberg, Inc. The defendants are Carsons, John T. Connors, Jr., Joseph S. Ehrman, Jr., Jess G. and Florence Buehler, Flora Kerasotes, George G. Kerasotes and four other members of the Kerasotes family.

The following facts are undisputed. On December 5, 1952, Lakeview conveyed the parcel of land that McGrath had conveyed to it in the 1942 exchange to Barry Drive-In Theatres, Inc., another corporation of which Bernard J. Rosenberg was president. On October 3, 1953, Barry Drive-In Theatres, Inc. (Barry) entered into an agreement to sell this land to Flora Kerasotes, and to sell the drive-in movie equipment upon the land to five other members of the Kerasotes family doing business as Starlite Drive-in Company. The contract provided that the total purchase price, payable in installments, was $90,000; the price of the real estate was stated to be $20,000 and the price of the equipment $70,000.

The contract also contained clause 12, upon which the plaintiffs base their claims: "It is agreed between the parties hereto that in the event the Buyers, after the completion of this Agreement, should remove all the drive-in theatre equipment and wish to sell the ground, they hereby

grant to Bernard J. Rosenberg, individually, if he be living, the option to purchase said real estate for the sum of Twenty-Five Thousand Dollars ($25,000.00)."

On February 24, 1954, the property was conveyed by Barry to Frank Rosenberg, Inc., by warranty deed. No mention was made in the deed of the Kerasotes contract, and that contract was not recorded until May 24, 1961.

On September 23, 1954, when the Kerasotes had paid $27,000 and the balance due under the contract was $63,000, George Kerasotes wrote the following letter addressed to "Mr. Bernard Rosenberg, Frank-Rosenberg, Inc.": "On October 1, 1954, we will remit in the amount of $58,000.00 upon receipt of warranty deed to Mrs. Flora Kerasotes and bill of sale to George Gus Kerasotes et al. buyers, for the balance due on the contract between Frank-Rosenberg, Inc., and George Gus Kerasotes et al. buyers. This being in full less a discount of $5,000.00. It is mutually understood that in the event the sale [sic] of the present real estate in excess of $25,000.00 that the aforementioned discount of $5,000.00 will be paid as a premium for the waiving of clause 12 of the aforementioned contract."

This offer was put before the directors of Frank Rosenberg, Inc. at their meeting on September 25, 1954. The minutes state: "The President reported that negotiations had been carried on with the Kerasotes interest for the payment of the balance due for the purchase of the Barry Drive-In * * *." The letter from George Kerasotes is then set forth and immediately thereafter clause 12 of the original contract is also set out in full. The minutes further state: "The President stated that in his opinion, it would be to the best interest of the corporation to grant the $5,000.00 discount, as set forth in the letter hereinbefore referred to and accept the sum of $58,000.00 in cash, at this time, instead of receiving the amount of $3,500.00 every quarter." A resolution was then adopted "that the offer of $58,000.00 in cash, for the completion of the pur-

chase of the real estate and personal property of Barry Drive-in Theatre be accepted and that upon payment of the $58,000.00, the President and Secretary are hereby authorized and empowered to execute a Bill of Sale to George G. Kerasotes, et al., for the personal property itemized in the Agreement dated October 3, 1953 and to execute a Warranty Deed to Flora Kerasotes, as provided in said Agreement." On September 29, 1954 the property was conveyed to Flora Kerasotes by a warranty deed which made no mention of the provisions of clause 12.

On February 1, 1955, Flora Kerasotes and the other members of the Kerasotes family, doing business as Starlite Drive-In Company, entered into a contract with Jess and Florence Buehler. The agreement provided that the Buehlers agreed to rent the property from March 1, 1955, to October 31, 1955, and that they should have an option to purchase the property on or before September 1, 1955, for a total price of $35,000, payable in installments. The agreement fixed the value of the real estate at $20,000 and the value of "the equipment and buildings" at $15,000. The Buehlers also agreed "not to run motion pictures upon this premises and such restriction will appear upon the deed." On March 21, 1961, Jess and Florence Buehler conveyed their interest in the property to John T. Connors, Jr. On March 24, 1961, Flora Kerasotes and the other members of the Kerasotes family also conveyed their interest in the property to Joseph S. Ehrman, Jr., who holds title to the property for Carsons.

With respect to this parcel, as with respect to the McGrath parcel, the contentions of the parties have covered a broad range. The plaintiffs contend: 1) that the option granted Bernard J. Rosenberg does not violate any rule of law; 2) that it has not been waived and that Bernard J. Rosenberg is not estopped to assert it, and 3) that the plaintiffs are entitled to specific performance or damages against the present title holders. The defendants contend:

1) that the Rosenberg option is actually a right of pre-emption which is invalid as an unreasonable restraint upon alienation; 2) that it violates the rule against prepetuities; 3) that there has been no breach of the option; 4) that the plaintiffs have been guilty of *laches*; 5) that the plaintiffs are estopped to enforce the option and 6) that the option has been waived and rescinded by mutual agreement.

Both in their claim for specific performance and in their claim for damages the plaintiffs rely solely on the provisions of clause 12 of the original contract. The subsequent modification of the terms of that provision is not mentioned in the complaint, and the plaintiffs do not seek to recover the $5,000 premium. The defendants assert that the original clause 12 was rescinded.

The first question to be determined, therefore, is whether or not the provisions of clause 12 survived the 1954 modification of the contract. We are of the opinion that they did not. The written offer from the Kerasotes that resulted in the modification of the contract spoke clearly of the waiving of clause 12. The text of that clause of the contract was specifically brought to the attention of the directors of Frank Rosenberg, Inc., when they considered the modification offer at their meeting on September 25, 1954. With the offer before them, and after consideration of clause 12 in the light of the offer, the directors authorized the modification of the contract and the execution of a warranty deed that did not mention the existence of any option. After the modification of the contract, the only right that remained was the right to receive a premium of $5,000 in the event the real estate was sold for more than $25,000. But as has been pointed out, the plaintiffs do not seek to enforce that right, but rather to recover damages for breach of the original option.

If there was any doubt about the understanding of the parties as to the meaning of the modification of the contract and the waiver of clause 12, it was removed by the

letter which was written by Bernard J. Rosenberg on behalf of Frank Rosenberg, Inc., when he learned of the sale of the property by the Kerasotes to the Buehlers. That letter is as follows:

"We have received innumerable telephone calls relative to the new county fair plan and read the newspaper account of same. I was sincerely surprised to learn that Mr. Jess Buehler had purchased the Pekin Drive In at Pekin, Illinois. As was pointed out in the first newspaper article relative to the above, 'Buehler told the board he is willing to have the fair on the ten acres of land he owns at the Pekin city limits.'

"We felt that when you were ready to dispose of the ground that the Pekin Drive In was erected on, that you certainly would have given us the first opportunity to re-purchase same for the original offer that we made under our original contract. We would greatly appreciate some sort of an explanation, as we felt that our business relationship was of the highest calibre, or at least I was led to believe that it was.

"Awaiting an early reply, we remain,
"Very truly yours,
"FRANK ROSENBERG, INC.
"Bernard J. Rosenberg"

This letter is inconsistent with the continued existence of the original clause 12. It makes no reference to the breach of an existing option. It speaks the language of business expectation rather than of contractual right. The reference to the plaintiffs' expectation that they would have been given an opportunity to repurchase "for the original offer that we made under our original contract" is inconsistent with the continued existence of a binding option under the provision of the original contract.

It is argued, however, that even if clause 12 was eliminated so far as Frank Rosenberg, Inc., is concerned, the modification of the contract did not bind Bernard J. Rosenberg. In our opinion this contention must be rejected. The original arrangement was a curious one that is not explained in the record. The internal relationships between Bernard J. Rosenberg and the various corporations of

which he was president are nowhere stated. So far as the record shows, he appears to have been a third party donee beneficiary. The plaintiffs say that if the Kerasotes were looking to Bernard J. Rosenberg "to agree to something clearly personal to him and outside of any corporate affair of Frank Rosenberg, Inc., they should have insisted on a definite commitment from him. This they did not do and they can hardly complain he misled them when he remained non-committal." But it was Bernard J. Rosenberg who was given the option under clause 12, and he was the man they dealt with in connection with its waiver. He states in his affidavit that he personally conducted the negotiations which led to the modification of the contract. The minutes show that it was he who recommended to Frank Rosenberg, Inc., that the offer to modify the contract be accepted by the corporation. And it was he who executed, as president of the corporation, the warranty deed to Flora Kerasotes, which made no mention of the existence of any outstanding option. See *Edwards* v. *Sarasota Venice Co.* (C.C.A. 5, 1917) 246 Fed. 773, 776.

If Bernard J. Rosenberg did not assent to the modification of the contract by the waiver of clause 12 his conduct was clearly misleading. "The general rule is that where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party." (*Dill* v. *Widman,* 413 Ill. 448, 455.) We are therefore of the opinion that Bernard J. Rosenberg individually is estopped by his conduct from asserting the continued existence of the option contained in clause 12 of the contract.

Since we take this view of the case it is unnecessary to consider the effect of the lapse of more than $6\frac{1}{2}$ years from the date of breach to the date of institution of suit and the changes in the position of other parties with refer-

ence to the land in question that took place during those intervening years. Similarly, other contentions need not be discussed and we express no opinion concerning them.

The decree of the circuit court of Tazewell County is affirmed.

*Decree affirmed.*