11 F.3d 1535
 Richard F. VITKUS, Plaintiff-Counter-Defendant-Appellant,
National Union Fire Insurance Company of Pittsburgh,
Pennsylvania, Plaintiff-Intervenor-Appellant,
v.
BEATRICE COMPANY, a Delaware corporation,
Defendant-Counter-Claimant-Appellee.
Richard F. VITKUS, Plaintiff-Counter-Defendant,
and
National Union Fire Insurance Company of Pittsburgh,
Pennsylvania, Plaintiff-Intervenor-Appellant,
v.
BEATRICE COMPANY, a Delaware corporation,
Defendant-Counter-Claimant-Appellee.
 Nos. 92-1083, 92-1093.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 13, 1993.
Rehearing Denied Jan. 13, 1994.
 
 Barry D. Hovis, of Sadler & Hovis, San Francisco, CA (Roger P. Thomasch, Mark J. Gilbert, and Leslie A. Eaton, of Ballard Spahr Andrews & Ingersoll, Denver, CO, with him on the brief, for Richard F. Vitkus and James M. Lyons, Peter L. Edwards, and Patrick M. Flaherty, of Rothgerber, Appel, Powers & Johnson, Denver, CO, with him on the brief for Nat. Union Fire Ins. Co. of Pittsburgh), for Richard M. Vitkus.
 Leo A. Knowles, of McGrath, North, Mullin & Kratz, Omaha, NE (Pamela K. Black and William F. Hargens of McGrath, North, Mullin & Kratz, Omaha, Nebraska, and Terence P. Boyle, Berliner, Boyle, Kaplan, Zisser & Walter, Denver CO, with him on the brief), for Beatrice Co.
 Before BALDOCK, WOOD,* and EBEL, Circuit Judges.
 EBEL, Circuit Judge.
 
 I. FACTS
 
 1
 This case arises out of the failure of Silverado Banking, Savings and Loan Association ("Silverado"). Plaintiff-appellant Richard Vitkus worked for Beatrice from 1978 to 1987 and served as General Counsel from 1981 until 1988. While employed by Beatrice, the company asked him to serve on the Silverado Board of Directors, which he did. He continued to serve on the Silverado board even after he left Beatrice.
 
 
 2
 At the time Vitkus served on the Silverado board, Article VI of the Beatrice By-laws provided for the indemnification of officers, directors and employees. Beatrice also maintained a directors and officers' liability insurance policy that specifically covered Vitkus' position on the Silverado board.
 
 
 3
 In March 1986, while a corporate takeover of Beatrice was pending, Beatrice executed a Severance Agreement with key employees, including Vitkus. Under the agreement, Vitkus was to be entitled to over $1 million in benefits if the takeover was successful and if he left Beatrice under one or more of the conditions specified in the agreement. One of the specified conditions entitled Vitkus to the benefits if he voluntarily left the company for "good reason," which was defined as including assignment to "duties materially inconsistent with your present position, duties, responsibilities and status with the Company."
 
 
 4
 In April 1986, Beatrice was acquired by an affiliate of Kohlberg Kravis Roberts & Co. Under the Merger Agreement, Beatrice agreed: (1) to maintain Beatrice's directors and officers' insurance and indemnification policy or an equivalent policy for claims made within six years of the effective date of the merger; (2) to indemnify the officers and directors of Beatrice to the fullest extent allowed by law with respect to all acts and omissions arising out of such individuals' services as officers, directors, employees or agents of the Company; and (3) to maintain indemnification of directors and officers as provided in the Beatrice By-laws.[1]
 
 
 5
 Following the merger, Vitkus resigned his position as an officer of Beatrice on August 29, 1986, and left the company on January 5, 1987. Vitkus contends that he left for "good reason" as defined in the Severance Agreement. On January 5, 1987, he received a Termination Letter from the company. The letter requested that he sign an attached General Release ("the Release"), and it set forth the benefits he was to receive upon termination of his employment. On the same day, Vitkus signed the Release, which broadly stated that it discharged all claims and financial obligations Vitkus might have in connection with his employment with Beatrice:
 
 
 6
 For good and valuable consideration ... the undersigned ... does hereby release ... Beatrice ... of and from any and all claims, ... financial obligations, actions, suits at law or in equity ... of any kind or nature, whether known or unknown (including, but without limitation of the foregoing, any claim for severance or vacation benefits, breach of contract, wrongful discharge, impairment of economic opportunity, reimbursement for fines paid, intentional infliction of emotional harm or other tort, or employment discrimination ...) which he ... may ever have had, may have now, on account of, arising out of, or in connection with his employment with Beatrice or the termination thereof, excepting only those financial obligations undertaken by Beatrice Companies, Inc., specifically set forth in its letter to you ... pursuant to which this General Release is being executed and delivered.
 
 
 7
 Aplt.App. 513. Vitkus now contends that he understood the Release to apply only to employment compensation and termination claims that he had at the time he signed the release. Vitkus did receive the benefits listed in the Termination Letter, which were worth more than one million dollars.
 
 
 8
 After leaving Beatrice, Vitkus went to work for Emhart Corporation. On September 21, 1990, the Federal Deposit Insurance Corporation ("FDIC") sued Vitkus and other Silverado officers and directors for claims arising out of Silverado's failure. Beatrice refused to defend him. National Union Fire Insurance Company ("National Union"), which had insured Vitkus under an endorsement to Emhart's directors and officers' liability policy, participated in his defense. National Union ultimately paid ten million dollars in settlement of the FDIC action on Vitkus' behalf. Vitkus also claims that he personally incurred expenses in connection with the FDIC action. Vitkus and National Union therefore sued Beatrice for common law indemnification, breach of contract to provide indemnification, and breach of covenant to maintain directors and officers' liability insurance.[2]
 
 
 9
 The district court granted summary judgment against Vitkus and National Union on the ground that the Release barred Vitkus' claims for indemnity and breach of covenant to maintain directors and officers' insurance.[3] On appeal, Vitkus first contends that the district court erred in holding that consideration for his release existed as a matter of law. His remaining three contentions center on whether the district court properly held as a matter of law that his claims were within the scope of the release. He asserts (1) that the district court erred in holding his indemnity claim barred by the Release because the indemnity claim was a "future" claim under Illinois law that could not be barred under the Release, (2) that the district court erred in holding his claim for breach of covenant to provide insurance barred by the Release because that claim was unknown at the time the Release was signed and therefore was outside its general scope, and (3) that the district court erred in resolving factual issues of intent when it held that his release covered the claim he now asserts. Although we agree with many of the district court's rulings, we conclude that it erred in resolving factual issues of the parties' intent on summary judgment. Accordingly, we reverse and remand on that issue.
 
 II. STANDARD OF REVIEW
 
 10
 We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c). Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). However, "we must view the record in a light most favorable to the parties opposing the motion for summary judgment." Deepwater Invs., Ltd v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991).
 
 
 11
 The moving party bears the initial burden of showing that there is an absence of any issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); Hicks v. Watonga, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that there are genuine issues for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.1991). "However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics, 912 F.2d at 1241.
 
 
 12
 To be a "genuine" factual dispute, there must be more than a mere scintilla of evidence. To avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. Summary judgment may be granted if the evidence is merely colorable or is not significantly probative. Id. at 250-51, 106 S.Ct. at 2511-12.
 
 III. THE ISSUE OF CONSIDERATION
 
 13
 Vitkus first asserts that the district court erred in granting summary judgment on the question of whether the Release was supported by consideration. We agree with the district court that the severance benefits Vitkus received pursuant to the Termination Letter were consideration for the Release.[4] D.C.Op. at 33. In doing so, we reject Vitkus's contention that Beatrice had a pre-existing duty under the Severance Agreement to pay these severance benefits and, consequently, that their payment could not serve as consideration for the Termination Letter and Release. See De Fontaine v. Passalino, 222 Ill.App.3d 1018, 165 Ill.Dec. 499, 505, 584 N.E.2d 933, 939 (1991) ("A promise to do something one is already obligated to do is no consideration...."). We hold that Beatrice did not have a pre-existing duty to pay the benefits under the Severance Agreement because Vitkus failed to comply with a condition precedent required for his receipt of such benefits under the agreement.
 
 
 14
 As an initial matter, the parties dispute who had the burdens of proof and production regarding the validity of a release on motion for summary judgment under Celotex and Illinois law. Under Illinois law, Beatrice had the initial burden of production on the existence of a release that is legal and binding on its face. O'Keefe v. Greenwald, 214 Ill.App.3d 926, 158 Ill.Dec. 342, 347, 574 N.E.2d 136, 141 (1991). Beatrice met this initial burden under Illinois law by pointing to the recitation in the Release itself that the Release was executed "[f]or good and valuable consideration." In doing so, it also met its burden under Celotex of pointing to places in the record showing a lack of disputed fact. See Applied Genetics, 912 F.2d at 1241 (citing Celotex, 477 U.S. at 324, 106 S.Ct. at 2553). Once Beatrice showed the existence of a release that recited that it was in exchange for good and valuable consideration, a presumption of the release's validity arose. O'Keefe, 158 Ill.Dec. at 347, 574 N.E.2d at 141; Wasmund v. Metropolitan Sanitary Dist., 135 Ill.App.3d 926, 90 Ill.Dec. 532, 534, 482 N.E.2d 351, 353 (1985). Under Illinois law, the burden then shifted to Vitkus to prove that the release was invalid by clear and convincing evidence. O'Keefe, 158 Ill.Dec. at 347, 574 N.E.2d at 141; Aqua-Aerobic Systems, Inc. v. Ravitts, 166 Ill.App.3d 168, 117 Ill.Dec. 77, 79, 520 N.E.2d 67, 69 (1988); Wasmund, 90 Ill.Dec. at 534, 482 N.E.2d at 353. This meant that Vitkus was required to set forth specific facts showing that there was a genuine issue as to the existence of consideration. See Applied Genetics, 912 F.2d at 1241 (citing Celotex, 477 U.S. at 324, 106 S.Ct. at 2553). Furthermore, because Vitkus would have had to prove the release's invalidity by clear and convincing evidence at trial, we judge whether the evidence in the record could support a reasonable jury finding that there was no consideration under the clear and convincing evidence standard. See Anderson, 477 U.S. at 252, 255-56, 106 S.Ct. at 2512, 2513-14.
 
 
 15
 Although Vitkus admittedly received a large severance payment, he claims that payment should not be regarded as consideration for the Release because Beatrice had a pre-existing duty to pay him those benefits under the Severance Agreement. The fatal flaw in this argument is that Vitkus failed to show that he complied with a condition precedent under the Severance Agreement that had to be satisfied before Beatrice would become legally obligated under that Agreement to pay him such severance benefits.
 
 
 16
 "A condition precedent is one which must be performed before a contract becomes effective or which is to be performed by one party to an existing contract before the other party is obliged to perform." Lyntel Products Inc. v. Alcan Aluminum Corp., 107 Ill.App.3d 176, 63 Ill.Dec. 4, 7, 437 N.E.2d 653, 656 (1981); see Wasserman v. Autohaus on Edens, Inc., 202 Ill.App.3d 229, 147 Ill.Dec. 571, 576, 559 N.E.2d 911, 916 (1990). If the condition remains unsatisfied, the obligations of the parties are at an end. Lyntel Products, 63 Ill.Dec. at 8, 437 N.E.2d at 657.
 
 
 17
 The district court properly found that the Severance Agreement required Vitkus to give timely written notice to Beatrice if he intended to quit pursuant to the Severance Agreement provision that permitted him to leave for "good reason" and thereby receive the Severance Agreement benefits. The provision stated:
 
 
 18
 Any termination of your employment for "good reason" shall be made in writing by delivery of notice thereof to the Company within 120 days after the first occurrence of the event giving rise to such "good reason."
 
 
 19
 Aplt.App. 472. The provision clearly gave a time limit within which notice had to be given and was conspicuously located next to the definition of "good reason." We therefore conclude that the provision was a condition precedent. Cf. Ansvar America Ins. Co. v. Hallberg, 209 Ill.App.3d 206, 154 Ill.Dec. 77, 79, 568 N.E.2d 77, 79 (1991) (holding that where requirement in contract was inconspicuously placed, gave no time limit for its satisfaction, and was included under heading "Additional Duty," it was not a condition precedent).
 
 
 20
 Vitkus does not point to evidence in the record showing that he gave such notice, nor does he even allege that he did so. Consequently, Beatrice's obligation to pay severance benefits under the Severance Agreement was not triggered and the company therefore had no pre-existing duty to pay Vitkus the benefits under the Severance Agreement. The payment of benefits under the Termination Letter thus constituted consideration for the Release which was attached to the Termination Letter.
 
 IV. INDEMNIFICATION CLAIM AS FUTURE CLAIM
 
 21
 We next reject Vitkus' contention that the Release could not have barred his indemnification claim because the claim did not arise until after the Release was executed. It is true that under Illinois law, a release will not bar claims "that originate subsequent to its execution ... absent a clear expression of intent to that effect." Chubb v. Amax Coal Co., Inc., 125 Ill.App.3d 682, 80 Ill.Dec. 917, 920, 466 N.E.2d 369, 372 (1984).
 
 
 22
 However, Vitkus did not only release causes of action under the Release; he also discharged existing "financial obligations" that Beatrice owed to him.[5] A releasor may relieve the obligor of existing contractual duties and other obligations, even where those obligations have not yet come due and before a claim concerning a breach of those obligations has as yet arisen. See Frank Rosenberg, Inc. v. Carson Pirie Scott & Co., 28 Ill.2d 573, 192 N.E.2d 823, 826 (1963) (holding that release discharged releasee of future obligations under a contract that he had with the releasor).
 
 
 23
 At the time Vitkus signed the Release on January 5, 1987, any obligation that Beatrice had to indemnify Vitkus already existed under Beatrice's By-laws, the Merger Agreement, or the common law. That Vitkus did not have a claim for indemnity until after he signed the Release is thus irrelevant to the question of whether he released Beatrice of its obligation to indemnify him that existed on January 5, 1987.[6] We therefore conclude that Beatrice's financial obligation to indemnify Vitkus existed at the time Vitkus signed the Release and could not be considered at that time as a "future obligation."
 
 
 24
 V. WAS THE PROMISE TO INSURE RELEASED?
 
 
 25
 Despite its promise to maintain directors and officers' liability insurance for six years after the merger, Beatrice allowed the policy to lapse in August 1986--several months before Vitkus signed the Release on January 5, 1987. Vitkus therefore had a claim for Beatrice's failure to maintain the insurance at the time he signed the Release. The district court held that the Release, which barred all claims in existence at the time of suit, "whether known or unknown," operated to bar Vitkus' claim for the failure to maintain insurance. Vitkus contends this was error because a Release cannot bar an unknown claim. We disagree.
 
 
 26
 Any obligation that Beatrice had under the Merger Agreement and By-laws was an existing financial obligation of which Vitkus was aware when he signed the Release. Beatrice's obligation to provide insurance thus could have been released as a known "financial obligation" under the Release.[7]
 
 VI. SPECIFIC VS. GENERAL RELEASE
 
 27
 Vitkus next contends that under Illinois law, his general release of all claims and financial obligations was limited as a matter of law to the specific claims enumerated in the Release. He asserts that because the Release specified wage and wrongful termination claims, it only discharged claims of that nature.[8] We believe that this argument relies on a misconception of Illinois law.
 
 
 28
 It is true that several intermediate Illinois appellate courts have held that when a release contains words of general release in addition to recitals of specific claims, the words of general release are limited to the particular claim to which reference is made. See Carona v. Illinois Central Gulf R. Co., 203 Ill.App.3d 947, 148 Ill.Dec. 933, 936, 561 N.E.2d 239, 242 (1990); Ahn Bros., Inc. v. Buttitta, 143 Ill.App.3d 353, 97 Ill.Dec. 620, 624, 493 N.E.2d 102, 106 (1986); Beauvoir v. Rush-Presbyterian-St. Luke's Med. Center, 137 Ill.App.3d 294, 92 Ill.Dec. 110, 116, 484 N.E.2d 841, 847 (1985); Robinson v. United States, 408 F.Supp. 132, 136-37 (N.D.Ill.1976) (applying Illinois law). However, the Illinois Supreme Court has limited this rule, holding that the scope of a general release is restricted to specific claims contained in the release agreement where the releasing party was unaware of other claims. Farm Credit Bank of St. Louis v. Whitlock, 144 Ill.2d 440, 163 Ill.Dec. 510, 513, 581 N.E.2d 664, 667 (1991). Where the parties are aware of an additional claim at the time of the signing of a general release, Illinois "courts have given effect to the general release language of the agreement to release that claim as well." Id. (citing Frank Rosenberg, Inc. v. Carson Pirie Scott & Co., 28 Ill.2d 573, 192 N.E.2d 823, 825-26 (1963)); Perschke v. Westinghouse Elec. Corp., 111 Ill.App.2d 23, 249 N.E.2d 698, 702 (1969); Cwik v. Condre, 4 Ill.App.2d 380, 124 N.E.2d 612, 614 (1954)). In Farm Credit Bank, the court found the release to be ambiguous as to whether the parties intended, by means of a general release which made specific reference only to other claims, to release an unspecified claim of which they had knowledge. Thus, the court remanded to permit the trier of fact to determine whether the parties intended to include the unspecified claim in the release. Id. Thus, Farm Credit boils down to a holding that the trier of fact must determine whether the parties intended to discharge an unspecified claim under an ambiguous release.[9]
 
 
 29
 We believe that an Illinois court would apply the Farm Credit rule to the release of obligations as well as to the release of accrued claims; that is, where the parties are aware of an additional, unspecified obligation at the time of signing the release, an Illinois court would give effect to general release language which releases "all financial obligations" to release the unspecified obligation as well. Frank Rosenberg, 192 N.E.2d at 826 (holding that a release that discharged all claims that might arise under a contract--other than two specified claims--discharged all obligations under the contract other than the two claims specifically excluded from its operation). Indeed, the purpose of the rule limiting the scope of general releases has been stated broadly enough to apply to releases of obligations as well as claims. As one Illinois court noted, the courts limit the effect of a general release "so that it would not cover a matter about which the releasing party knew nothing at the time the release was signed." Perschke, 249 N.E.2d at 702.
 
 
 30
 We find the instant case to be analogous to Farm Credit. At the time he signed the Release, Vitkus was aware of both Beatrice's promise to maintain directors and officers' liability insurance for six years after the merger date and of the clauses in Beatrice's By-laws and the Merger Agreement providing for indemnification. Yet he signed a release containing general language discharging claims that could easily encompass the indemnity and insurance obligations on which he bases his claims in this case. We therefore hold that, under Illinois law, the scope of the Release should not be restricted as a matter of law to the more specific claims or obligations enumerated in the Release. That brings us to the factual matter of the parties' intent.
 
 
 31
 VII. INTENT OF PARTIES TO RELEASE INDEMNITY AND INSURANCE CLAIMS
 
 
 32
 Vitkus asserts that, assuming the general language of the Release is not confined to the specific claims and obligations enumerated therein as a matter of law, the district court nevertheless improperly decided factual issues concerning the parties' intent by granting summary judgment in favor of Beatrice on the scope of the Release. Vitkus contends that he did not intend to discharge Beatrice's financial obligation to indemnify him and to provide directors and officers' insurance; rather, he argues that the Release was only intended to discharge any employment compensation and termination claims he might have.[10] We believe there is a latent ambiguity in the Release as to its intended scope and that summary judgment was therefore inappropriate.
 
 
 33
 Under Illinois law, a release is a contract, and therefore is governed by contract law. Farm Credit Bank of St. Louis v. Whitlock, 144 Ill.2d 440, 163 Ill.Dec. 510, 513, 581 N.E.2d 664, 667 (1991). Where a written agreement is unambiguous, the court must enforce the agreement as written. Rakowski v. Lucente, 104 Ill.2d 317, 84 Ill.Dec. 654, 657, 472 N.E.2d 791, 794 (1984). In such a case, "[b]oth the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any extrinsic aids." Id.; see Farm Credit, 163 Ill.Dec. at 513, 581 N.E.2d at 667; Haley v. Posdal, 201 Ill.App.3d 963, 147 Ill.Dec. 743, 748, 559 N.E.2d 1083, 1088 (1990); Aqua-Aerobic Systems, Inc. v. Ravitts, 166 Ill.App.3d 168, 117 Ill.Dec. 77, 79, 520 N.E.2d 67, 69 (1988); Shultz v. Delta-Rail Corp., 156 Ill.App.3d 1, 108 Ill.Dec. 566, 571, 508 N.E.2d 1143, 1148 (1987). However, where a court determines that a contract is ambiguous as a matter of law, its construction becomes a question of fact, and parol evidence is admissible to ascertain the parties' intent. Farm Credit, 163 Ill.Dec. at 513, 581 N.E.2d at 667 (citing Quake Constr., Inc. v. American Airlines, Inc., 141 Ill.2d 281, 152 Ill.Dec. 308, 565 N.E.2d 990 (1990)).
 
 
 34
 Whether a contract is ambiguous is a question of law. Farm Credit Bank, 163 Ill.Dec. at 513, 581 N.E.2d at 667; Shultz, 108 Ill.Dec. at 571, 508 N.E.2d at 1148. A contract is ambiguous if it is capable of being understood in more than one sense. Farm Credit, 163 Ill.Dec. at 513, 581 N.E.2d at 667. The Illinois Supreme Court recently recognized the doctrine of latent ambiguity. A latent ambiguity exists "where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic factor or extraneous evidence creates a necessity for interpretation or a choice among two possible meanings." Hoglund v. State Farm Mutual Auto Ins. Co., 148 Ill.2d 272, 170 Ill.Dec. 351, 355, 592 N.E.2d 1031, 1035 (1992) (quoting Black's Law Dictionary 102 (3d ed. 1933)); see also FDIC v. W.R. Grace & Co., 877 F.2d 614, 620-22 (7th Cir.1989), cert. denied, 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990) (recognizing similar doctrine in Illinois intermediate appellate court cases).
 
 
 35
 The apparently clear language in the Release discharging "financial obligations" that are "on account of arising out of or in connection with [Vitkus'] employment with Beatrice or the termination thereof" contains a latent ambiguity as to whether the parties intended to release Beatrice's obligations to provide indemnity and insurance. The circumstances surrounding the execution of the Release suggest two reasonable meanings. That Vitkus served on the Silverado board at the request of Beatrice suggests that, in fact, the parties viewed Vitkus' directorship as connected with his employment; consequently, the Release could be read as encompassing Beatrice's duty to provide insurance and indemnity when it discharged "financial obligations ... on account of arising out of or in connection with his employment at Beatrice."
 
 
 36
 On the other hand, Vitkus stated in an affidavit that he understood the Release to cover "such traditional employee claims as age discrimination, wrongful termination, or the like." Although under Illinois law, a contract is not rendered ambiguous simply because the parties do not agree upon its meaning, Shultz, 108 Ill.Dec. at 571, 508 N.E.2d at 1148, other circumstances surrounding the execution of the release suggest that Vitkus' understanding of the Release was not unfounded. Language in the pre-merger Severance Agreement indicates that the termination benefits that it offered were to be in addition to rather than in lieu of other employment benefits Beatrice owed Vitkus:It is expressly agreed that this Agreement supersedes any and all existing agreements between you and the Company or any of its subsidiaries, and any and all plans and policies of the Company or any of its subsidiaries, ... with regard to benefits to be paid to you on account of termination of employment or a Change of Control pursuant to any severance policy or any individual arrangement (including an employment or severance agreement) which you may have with the Company or any of its subsidiaries. Except as provided in the preceding sentence, payments and benefits to you hereunder will be made and provided without regard to and in addition to any other payments or benefits required to be paid and provided to you at any time hereafter under any other agreement, plan or policy of the Company ... relating to compensation, retirement or other benefits. In other words, the payments and benefits provided herein shall be in addition to and not in lieu of salary, consulting payments, bonus payments, incentive compensation retirement benefits, and any other payments or benefits other than benefits to be paid to you on account of termination of employment or a Change of Control pursuant to any individual arrangement (including an employment or severance agreement) which you may have with the Company or any of its subsidiaries.
 
 
 37
 Aplt. App. 464. Thus, under the Severance Agreement, Vitkus had the right to retain benefits that he received from Beatrice that were not provided in conjunction with his termination. The circumstances suggest that when Vitkus received the Termination Letter, which provided benefits nearly identical to those to which he was entitled under the Severance Agreement, he could have been justified in believing that the Termination Letter was simply implementing the Severance Agreement and that it, like the Severance Agreement, left unaffected benefits other than those in connection with his termination. In fact, the Termination Letter states it is "to confirm the provisions of [Vitkus'] separation from Beatrice." Aplt.App. at 511. In the context of the Severance Agreement and the Termination Letter (to which the Release was attached), we believe that language releasing Beatrice's financial obligations in connection with Vitkus' employment creates a latent ambiguity as to whether it was intended to include Beatrice's financial obligations in relation to Vitkus' service on the Silverado board, such as the obligation to provide insurance and indemnity.
 
 
 38
 Because the Release is ambiguous, the determination of what the parties intended to be included within its scope is a fact question for the jury. We believe that the evidence detailed above is sufficient to raise a genuine issue of material fact as to whether the parties intended the Release to discharge Beatrice's insurance and indemnity obligations relating to Vitkus' service on the Silverado board. Summary judgment was therefore inappropriate, and we remand Vitkus' claims to the district court.
 
 VIII. CONCLUSION
 
 39
 We therefore REVERSE the district court's grant of summary judgment in favor of Beatrice, and we REMAND for further proceedings.
 
 
 
 *
 The Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 Beatrice contended below that the Merger Agreement and Beatrice By-laws did not give rise to an obligation to insure and indemnify Vitkus for his Silverado directorship, but the district court did not reach this issue. The parties do not argue this issue before us and we decline to reach it. For purposes of this appeal, we will assume that Beatrice was obligated to provide indemnity and insurance for Vitkus and limit our inquiry to whether the Release discharged that obligation
 
 
 [2]
 National Union also sued Emhart for reimbursement of sums it paid in settlement of the FDIC's claims against Vitkus. That case is the subject of a separate appeal. See National Union Fire Insurance Co. v. Emhart Corp., 11 F.3d 1524 (10th Cir.1993)
 
 
 [3]
 The district court ruled that because the Release barred Vitkus' claims, summary judgment was also appropriate against National Union, as subrogee. National Union does not appear to contest the district court's holding that its claims rise and fall with those of Vitkus. For ease of reference, we will henceforth refer to the appellants as "Vitkus."
 
 
 [4]
 The district court held that, under the "most significant relationship" test applied by Colorado courts to choice-of-law issues, Illinois law was applicable to the Release. D.C.Op. at 25-26. The parties do not contest this finding on appeal
 
 
 [5]
 The Release literally states that it discharges "all claims, ... financial obligations ... which he ... may ever have had, may have now...." Technically, the language suggests that it is releasing financial obligations that Vitkus owed. However, this reading is clearly absurd; the language of the Release clearly indicates that Vitkus is releasing Beatrice of Beatrice's obligations. The Release states that "the undersigned [which is Vitkus] ... does hereby release ... Beatrice...." The parties do not argue to the contrary
 
 
 [6]
 We assume for purposes of this issue that the term "financial obligations" includes the obligation to indemnify. We address whether the parties intended the obligation to indemnify to be included in the scope of the Release in Part VII
 
 
 [7]
 Again, we note that the question of whether the Release was in fact intended to discharge the obligation to provide indemnification is a different question from the question we address here. We discuss the issue of intent in Part VII
 
 
 [8]
 Vitkus points to the "included" clause to support this argument:
 ... any and all claims, ... [and] financial obligations, actions, suits at law or in equity ... (including, but without limitation of the foregoing, any claim for severance or vacation benefits, breach of contract, wrongful discharge, impairment of economic opportunity, reimbursement for fines paid, intentional infliction of emotional harm or other tort, or employment discrimination ...) which he, individually or as a member of a class, may ever have had, may have now, on account of arising out of or in connection with his employment with Beatrice or the termination thereof....
 Aplt.App. 513 (emphasis added).
 
 
 [9]
 Essentially, we believe that Farm Credit limits the general-release-is-limited-to-specific-language rule to those cases in which a general release mentions specific claims and the parties are unaware of an additional, unspecified claim; in such a case, the additional, unspecified claim would not be barred by the release. Presumably this is because the parties could not possibly have intended the general language in a release to release a claim of which they were unaware, although they might have intended general language to release a claim of which they were aware
 
 
 [10]
 Beatrice contends that Vitkus did not raise the question of ambiguity in the release below and therefore cannot argue on appeal that the district court should have examined extrinsic evidence as well as the language of the Release to determine whether the parties intended to release the insurance and indemnity claims. We find that the question of the proper construction of the Release was raised below and therefore reach the question of ambiguity and intent in determining whether summary judgment was appropriate