UNITED STATES COURT OF APPEALS

**Filed 6/26/96**

FOR THE TENTH CIRCUIT

TONY R. DODD,

      Plaintiff-Appellant,

v.

ROD GOTTULA, Department of Clinical
Services; AL ROWAN, Department of
Clinical Services; LARRY REEVES,
Captain, Department of Corrections -
Department of Facility Services; John
Doe, Supervisor, Department of
Corrections, Department of Facility
Services; GALE NORTON, Attorney
General of Colorado,

      Defendants-Appellees.

No. 95-1458
(D.C. No. 95-M-494)
(D. Colo.)

ORDER AND JUDGMENT[*]

Before EBEL, BARRETT, and HENRY, Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff appeals the district court's entry of summary judgment in favor of defendants in his civil rights action for alleged violations of his Eighth Amendment rights. Plaintiff contended that defendants demonstrated deliberate indifference to his serious medical needs, thereby subjecting him to cruel and unusual punishment. The district court dismissed the case with prejudice, concluding that, "at best, the plaintiff has claims for negligence against the defendants and that assuming the allegations made by plaintiff as being correct they do not rise to the level of a violation of his rights protected under the United States Constitution." R. Vol. I, Doc. 38 at 2. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, agree with the district court, and affirm.

We review the grant of summary judgment de novo, applying the same standards as applied by the district court pursuant to Fed. R. Civ. P. 56(c). Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995). Summary judgment is proper under Rule 56(c) when the evidence presented does not establish a genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Once the moving party meets its initial burden of showing "the absence of a genuine issue of material fact," the nonmoving party "must set forth specific facts showing a genuine issue for trial as to those dispositive

matters for which it carries the burden of proof." Wolf, 50 F.3d at 796. "To avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party." Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993).

## I. Background

The undisputed facts show that while incarcerated at the Four Mile Correctional Facility (FMCF) in Canon City, Colorado, plaintiff worked as a welder and pipefitter on construction projects at the facility from August 1991 through February 1992. Plaintiff's work required him to enter buildings at FMCF known as The Barn and The Potato Cellar. The Barn housed the offices of the Facility Services Field Office (FSFO), of which defendant Reeves was the Construction Inspector, and The Potato Cellar was used as a storage facility for tools and supplies.

In the fall of 1991, several employees who worked full time in The Barn, including Reeves, began experiencing flu-like symptoms. These employees were ultimately examined by Dr. Cecile Rose at the National Jewish Center for Immunology and Respiratory Medicine in Denver, Colorado, who determined that they suffered from hypersensitivity pneumonitis (HP). HP is a respiratory disorder caused by inhaling an airborne fungus, which triggers an immune reaction. As a result of Dr. Rose's diagnoses, the Colorado Department of Health, with the assistance of Dr. Rose, investigated potential sources of the fungus at FMCF. All

inmates and employees were removed from the suspect buildings in November, and in December 1991, both The Barn and The Potato Cellar were condemned.

Although the offices previously housed in The Barn were moved elsewhere, not all the tools and supplies could be moved from The Potato Cellar. Plaintiff alleged that he was "repeatedly" directed to reenter the buildings after they were condemned to retrieve needed tools and supplies. R. Vol. I, Doc. 4 at 4. In his affidavit, Reeves acknowledged that plaintiff reentered the condemned buildings with him on six occasions; he stated that each visit lasted no more than fifteen minutes. Plaintiff did not refute Reeves' description of the number or duration of the visits to the condemned buildings.

In November 1991, plaintiff began experiencing respiratory problems and was sent to the Colorado State Hospital for testing. Plaintiff was diagnosed with mold allergies, for which he received treatment. In January 1992, plaintiff was interviewed by Dr. Rose, who administered a pulmonary symptom questionnaire. Plaintiff stated that he was currently smoking one pack of cigarettes a day, and that he had previously smoked two packs a day. In March 1992, after plaintiff's last exposure to the condemned buildings, plaintiff underwent extensive diagnostic testing at National Jewish Center. Lung biopsies showed "mild bronchitis, mild hemosiderosis, and no evidence of interstitial fibrosis or granulomas." Id., Doc. 28, Ex. F at 2. Dr. Rose concluded from the tests that plaintiff had no clinical evidence of HP. She did, however, recommend that plaintiff stop smoking. Another physician, who examined some of the biopsy samples at Dr. Rose's request, noted that

4

changes in plaintiff's lungs were consistent with his smoking history; he found no evidence of HP.

Plaintiff contends that, since his incarceration, his breathing capacity has been reduced significantly and he now suffers from various respiratory problems. His condition, plaintiff maintains, is a result of defendants' deliberate indifference to his health and welfare. Specifically, plaintiff asserts that he was exposed to the harmful environment in The Barn and The Potato Cellar and that Reeves continued the exposure even after the buildings were condemned; that Reeves kept plaintiff at the FMCF to use him as a welder even though welding was harmful to his lungs; that defendants conspired to keep secret from plaintiff information about the extent and cause of his injuries; and that defendants Rowan and Gottula provided him inadequate medical treatment.

## II. Disposition of Plaintiff's Claims

### A. Claims Against Defendants Improperly Sued

At the outset, we note that the district court properly disposed of plaintiff's claims against defendants in their official capacities and, to the extent plaintiff attempted to state them, against the Department of Corrections itself. "Neither the state, nor a governmental entity that is an arm of the state for Eleventh Amendment purposes, nor a state official who acts in his or her official capacity, is a 'person' within the meaning of [42 U.S.C.] § 1983." Harris v. Champion, 51 F.3d 901, 905-06 (10th Cir. 1995). Likewise, the district court

5

properly disposed of plaintiff's claims against the named defendant, Attorney General Norton. Plaintiff stated no allegations against the Attorney General and admitted that she was named only as "the Attorney of Record in actions brought against State Employees," R. Vol. I, Doc. 35 at 4. See Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976)("Personal participation is an essential allegation in a § 1983 claim."). We turn, then, to plaintiff's claims against defendants Gottula, Rowan, and Reeves in their individual capacities.

## B. Eighth Amendment Claims

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976)(quotation and citation omitted). An Eighth Amendment claim for deliberate indifference to serious medical needs has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind." Handy v. Price, 996 F.2d 1064, 1067 (10th Cir. 1993)(citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Even if we assume that plaintiff's respiratory problems constituted a sufficiently serious medical need to meet the objective component, we conclude that plaintiff failed to establish a genuine issue of material fact with respect to the subjective component.

To meet the subjective component, a prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). Thus, to survive summary judgment, plaintiff "was required to present facts that would allow a reasonable fact finder to conclude that the defendants knew of the dangers of [plaintiff's work environment] and deliberately exposed him to it." Clemmons v. Bohannon, 956 F.2d 1523, 1528 (10th Cir. 1992)(en banc).

The undisputed evidence showed that, as soon as health professionals determined that The Barn and The Potato Cellar might be responsible for respiratory ailments suffered by some employees, they removed all correctional personnel and inmates from the buildings. Although Reeves later directed plaintiff to reenter the condemned buildings and accompanied him into the buildings, Reeves stated in his affidavit that he did not think the brief exposure during the few short visits posed a risk to either his own health (despite his diagnosis of HP) or that of plaintiff, because he understood from Dr. Rose that HP occurred only after constant exposure to organic contamination over a long period of time. Dr. Rose corroborated the lack of risk to plaintiff in her affidavit, stating: "It is unlikely that five or six visits to the contaminated buildings, lasting only long enough to retrieve tools, would pose any significant additional risk. . . . In my opinion, to a reasonable degree of medical probability, the risk to a person without HP from entering a contaminated building long enough to obtain tools and

7

supplies would be negligible." R. Vol. I, Doc. 33, Affidavit of Dr. Cecile Rose at 4. Thus, plaintiff failed to establish a genuine issue of material fact as to whether Reeves knew of a substantial risk of serious harm to plaintiff and disregarded it.

Based on our review of the record, it appears that plaintiff's claims for exposure to an injurious work environment were based on a second hazard, separate and apart from the organic contamination in the condemned buildings, namely, the fumes given off by welding. Dr. Rowan's affidavit acknowledges that welding gives rise to toxic fumes, exposure to which "h[as] been known to have adverse effects on a person's respiratory system." Id., Doc. 33, Affidavit of A. Rowan Jr., M.D. at 5-6. Plaintiff contended that Reeves disregarded a serious risk to plaintiff's health by assigning him to welding jobs, which were bad for his lungs. Plaintiff, however, did not allege, or present any evidence establishing, that Reeves knew of any adverse effects from welding when he assigned plaintiff the jobs. Thus, this aspect of plaintiff's injurious work environment claim also must fail.

Plaintiff's claim that defendants conspired to keep medical information secret from him is unsupported by any evidence in the record. Instead, the evidence showed that plaintiff was fully informed about the nature of HP, its causes, and the ultimate results of his extensive testing at National Jewish Center. Plaintiff's conclusory statement that he could present witnesses who would testify to a cover up is not sufficient to withstand summary judgment. Finally, plaintiff's claim for inadequate medical treatment is without merit. The record showed that plaintiff received treatment for his diagnosed allergies, that he was given

8

state-of-the-art diagnostic testing to rule out the possibility of HP, and that Dr. Gottula subsequently approved nicotine patches for plaintiff to help him quit smoking.

The judgment of the United States District Court for the District of Colorado is AFFIRMED. The mandate shall issue forthwith.

<div style="margin-left: 55%;">

Entered for the Court

Robert H. Henry
Circuit Judge

</div>