DAVID A. O'KEEFE, Plaintiff-Appellant, v. MICHAEL S. GREENWALD *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—89—1255

Opinion filed May 21, 1991.

Susan E. Loggans & Associates, of Chicago (David A. Novoselsky, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Robert B. Austin, Hugh C. Griffin, and Diane L. Jennings, of counsel), for appellee Robert C. Hamilton.

French, Kezelis & Kominiarek, of Chicago (Richard G. French and Russell P. Veldenz, of counsel), for appellees Michael S. Greenwald and Orthopedic Surgeons, Ltd.

JUSTICE COCCIA delivered the opinion of the court:

After plaintiff David A. O'Keefe was injured in a car accident, he brought a negligence action against the driver of the other car, and later executed a release pursuant to a settlement. Plaintiff then filed this action for subsequent medical malpractice against defendants Dr. Robert C. Hamilton, Dr. Michael Greenwald and Orthopedic Surgeons,

Ltd., for failure to diagnose an injured hip. Additionally, he alleged that Dr. Hamilton unnecessarily performed surgery on his knee. Defendants raised the affirmative defense that the action was barred by plaintiff's release of the original tortfeasor.

The trial court directed a verdict at the close of plaintiff's case in favor of defendants as to the hip injury based on plaintiff's failure to show that defendants' negligence resulted in a separate and distinct injury. At the close of all the evidence, the jury returned a verdict in favor of Dr. Hamilton as to the knee injury. Other defendants were dismissed on the basis that claims against them were time barred, and those defendants are not involved in this appeal.

On appeal, plaintiff contends that the court improperly shifted the burden of proof on the affirmative defense to plaintiff; that he presented sufficient evidence to permit the jury to decide the question of whether defendants' negligence caused a separate and distinct injury; and that the court erred in not permitting him to make an offer of proof.

On February 28, 1978, plaintiff was injured in an automobile accident in Streator, Illinois. Plaintiff was treated at a hospital for lacerations and a concussion. In May 1978, he was treated by defendant Dr. Greenwald. In November 1979, he was treated by defendant Dr. Hamilton.

On January 9, 1980, plaintiff filed a complaint against the driver of the other car, Jack Carpenter.

On February 27, 1982, Dr. Alvin M. Kanter, an orthopedic surgeon, examined plaintiff at the request of plaintiff's counsel. On that day, he examined plaintiff and took X rays. On the same day, he showed plaintiff the X rays and explained to him that his hip was fractured.

On February 27, 1982, Dr. Kanter wrote to plaintiff's counsel that X rays showed severe degeneration of the hip joint and "healed posterior fracture-dislocation of the left hip with subsequent reduction, avascular necrosis of the femoral head and destruction of the entire hip joint." Dr. Kanter concluded: "I feel there is no question that this problem as it exists at present is related to the trauma that he described. The laceration of the left knee resulted in a fracture-dislocation of the left hip, which has gone on to the problem that he demonstrates at present." This letter was stamped "received" by plaintiff's counsel on March 2, 1982.

On March 4, 1982, plaintiff executed a release to Carpenter for $50,000. The release stated:

"I, David O'Keefe *** do hereby release, acquit and discharge said party [Carpenter] or parties and all other persons or corporations of and from all claims and demands, actions and causes of action, damages, cost, loss of service, expenses and compensation on account of, or in any way growing out of personal injuries, whether known or unknown to me at the present time, and property damage, resulting or to result from an occurrence that took place on or about the 28th day of February, 1978 *** ."

Two months later, on May 4, 1982, plaintiff filed this malpractice action against defendants. The complaint alleged that defendants failed to diagnose and treat the hip fracture. It alleged that plaintiff first discovered defendants' negligence on February 22, 1982.

Plaintiff's second amended complaint alleged that plaintiff first discovered the negligence on May 3, 1982.

Plaintiff's third amended complaint added the allegation that Dr. Hamilton unnecessarily performed knee surgery on plaintiff.

On January 20, 1983, Dr. Greenwald filed a motion to dismiss which maintained that plaintiff's claim was time barred by the statute of limitations, and that plaintiff was barred from bringing this suit as a result of the general release executed in March 1982 to Carpenter, the original tortfeasor. On January 28, 1983, the court denied the motion to dismiss. Defendants' August 1984 motion for reconsideration of that order was also denied.

In September 1984, defendants renewed the motions to dismiss based on the statute of limitations and the release. On January 22, 1985, the motions were again denied.

In February and March 1989, defendants filed answers and affirmative defenses to the third amended complaint. The affirmative defenses again raised the issue of the release to the original tortfeasor barring an action against defendants as subsequent tortfeasors.

Just prior to trial, defendants moved for summary judgment based on the general release. The court reserved judgment in order to afford plaintiff an evidentiary hearing on the issue of whether defendants caused a separate and distinct injury rather than merely aggravating the original hip injury. The court stated that plaintiff's burden was to show a separate and distinct injury caused by defendants' alleged negligence.

Following plaintiff's opening statement at trial, defendants moved for a directed verdict on the basis of admissions that the injury was an aggravation, not a separate and distinct injury. The court denied the motion.

Plaintiff introduced the following evidence at trial.

On February 23, 1978, the day of the accident, plaintiff was treated for facial, head and knee lacerations, and a concussion, by Dr. Robert Jarrett at the hospital emergency room. Plaintiff testified that he complained of pain radiating from the knee up the leg to the hip. No hip X rays were taken. Dr. Jarrett, a general surgeon, testified for plaintiff at trial that he treated plaintiff following the accident. No physical examination for, or diagnosis of, a hip dislocation or fracture was ever made.

In March 1978, plaintiff saw his personal physician, Dr. Samuel J. Goldhaber, a family practitioner. Plaintiff complained of knee, thigh and hip pain to Dr. Goldhaber. Dr. Goldhaber testified in an evidence deposition which was read at trial that he referred plaintiff to a physical therapist and later to defendant Dr. Greenwald.

Elsy McLemore, a physical therapist, testified for plaintiff that she treated him from March 17, 1978, through May 1978, at the request of Dr. Goldhaber. Plaintiff complained repeatedly of pain in the left leg, radiating into the hip. On March 17, 1978, McLemore wrote in her notes: "Patient sustained bruises to the left lower extremity in an accident recently, yesterday or day before. He reports he finds it difficult to bear weight on left lower extremity."

Plaintiff testified that he did not recall telling McLemore on March 17, 1978, about any "accident." He did recall, however, that one day he stood at home, felt severe leg pain in the leg and hip, which "popped or whatever, air crunch or something like that." He stumbled against an end table and "hit my leg a little bit." He was not sure, but he thought that might be what McLemore was referring to in her testimony.

In April 1978, plaintiff began seeing defendant Dr. Greenwald, an orthopedic surgeon. Plaintiff testified that he complained of continued pain in his leg up into his hip. Dr. Greenwald testified for plaintiff at trial that he ordered knee X rays and an arthrogram of the left knee, which showed a small tear in the medial meniscus. Dr. Greenwald recommended conservative treatment for the knee. He did not diagnose a hip fracture. He believes the fracture occurred at the time of the original accident.

In November 1979, plaintiff began seeing defendant Dr. Hamilton. Plaintiff testified that he complained of leg and hip pain. Dr. Hamilton testified for plaintiff at trial as an adverse witness. He testified that in December 1979, he performed knee surgery on plaintiff. Dr. Hamilton believed the hip injury occurred at the time of the car accident.

Plaintiff testified that after surgery, he continued to complain of pain in the upper thigh and knee joints.

Dr. Kanter testified for plaintiff at trial that he performed a total hip replacement on plaintiff. Furthermore, in his medical opinion the fracture occurred in the February 1978 automobile accident. Plaintiff had reported to him that his pain began at that time.

Dr. Martin Silverstein, an orthopedic surgeon, testified as an expert witness for plaintiff. Dr. Silverstein opined that defendants were negligent in not diagnosing the hip fracture, which he believed occurred at the time of the accident. Dr. Silverstein also explained that the condition called "avascular necrosis" occurred where the blood supply to the hip is interrupted "as a result of massive, major trauma to the hip joint." Unless measures are taken to correct it, the head of the femur dies. Plaintiff's "joint was left with one or multiple fragments within it which contributed to the overall degeneration of his hip."

Dr. Winfred Yaslow, an orthopedic surgeon, also testified as an expert witness for plaintiff. Dr. Yaslow opined that defendants were negligent in not diagnosing the hip fracture, which he believed occurred at the time of the accident.

Dr. Howard Bates Noble, an orthopedic surgeon, also testified for plaintiff. He opined that defendants were negligent in not diagnosing the hip fracture, which he believed occurred at the time of the accident.

Dr. Mitchell Sheinkop, retained as an expert witness on behalf of defendant Dr. Greenwald, was called to testify by plaintiff as part of his case in chief. Dr. Sheinkop opined that the hip injury occurred at the time of the accident. Plaintiff moved to declare him as an adverse witness.

At the close of plaintiff's evidence, the defendants moved for a directed verdict. Extensive arguments were heard by the court. The court then granted Dr. Greenwald's motion for a directed verdict in its entirety. The court granted Dr. Hamilton's motion as to plaintiff's hip injury but denied the motion as to the knee injury. The trial proceeded as to Dr. Hamilton's liability for the alleged negligence in treating the knee. The jury returned a verdict for defendant Dr. Hamilton and against plaintiff.

Plaintiff contends that the trial court erred in directing verdicts for defendants at the close of plaintiff's case, and that the wrong burden of proof was imposed by the trial court.

■ A verdict may be directed when all the evidence viewed in its aspect most favorable to the opponent so overwhelmingly favors the

movant that no contrary verdict based on the evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

■ A defendant's claim that a release bars plaintiff's cause of action against subsequent tortfeasors is an affirmative defense. (*Tidwell v. Smith* (1960), 27 Ill. App. 2d 63, 169 N.E.2d 157.) In Illinois, the original tortfeasor is liable for both the original injury and for any aggravation of that injury caused by the subsequent negligence of a treating physician. *Gertz v. Campbell* (1973), 55 Ill. 2d 84, 302 N.E.2d 40.

■ In *Alsup v. Firestone Tire & Rubber Co.* (1984), 101 Ill. 2d 196, 461 N.E.2d 361, the court held prospectively from January 20, 1984, that under section 2(c) of the Illinois Contribution Among Joint Tortfeasors Act (Ill. Rev. Stat. 1985, ch. 70, par. 302(c)), only those persons specifically identified in the release are discharged under the release. Because that rule is prospective, it is not applicable here, where the release was signed on March 4, 1982. For releases executed before January 20, 1984, the release of the original tortfeasor acts as a release of the subsequently negligent physician. *Tidwell v. Smith*, 27 Ill. App. 2d 63, 169 N.E.2d 157.

In *Kolar v. Ray* (1986), 142 Ill. App. 3d 912, 492 N.E.2d 899, we held that where defendants merely aggravated the original injury, the original tortfeasor was liable for that aggravated injury. A release of the original tortfeasor acted as a release from liability for the subsequent alleged medical negligence by defendants. Accord *Trexler v. Hubbard* (1983), 118 Ill. App. 3d 697, 455 N.E.2d 274, *rev'd on other grounds* (1984), 104 Ill. 2d 26, 470 N.E.2d 300; *Guth v. Vaughan* (1923), 231 Ill. App. 143.

■ This court follows the first district holding in *Kolar v. Ray.* We recognize that a different district of this court has held to the contrary. In *Cram v. Showalter* (2d Dist. 1986), 140 Ill. App. 3d 1068, 489 N.E.2d 892 (as modified upon denial of rehearing), the court held that a release of the original tortfeasor did not release the subsequent negligence of the defendant physicians. We decline to follow that holding. See generally Annot., 39 A.L.R.3d 260 (1971) (discussing split in jurisdictions on this question).

In *Cram*, the court relied on the holding in *Gertz v. Campbell*, which provided for equitable apportionment between the original tortfeasor and the negligent physician. Here, Carpenter never sought equitable apportionment from defendants. The court in *Cram* also relied on *Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301, which held that the tortfeasor's payment in exchange for a covenant

not to sue could not be deducted from a verdict against the subsequent treating physicians. The present case does not involve a covenant not to sue.

The recognition in *Gertz* and *Borowski* that the negligence of a subsequent treating physician violates a different duty towards plaintiff than the duty violated by the original tortfeasor does not alter our holding here. The issue here is not whether defendants and Carpenter were joint tortfeasors. Unlike the present case, *Gertz* and *Borowski* did not involve the effect of a general release on the liability of subsequent treating physicians. To the extent that *Gertz* and *Borowski* recognize that separate and distinct injuries are possible, the trial court here provided plaintiff with more than ample opportunity to prove the existence of separate and distinct injuries, which he was unable to do.

Plaintiff also urges that *Cram* should be followed, instead of *Kolar v. Ray*, because *Cram* is more factually similar to the present case since no suit was pending against the doctors when the release at issue in *Cram* was signed. We do not find this reasoning persuasive. Here, as discussed below, plaintiff was aware of the defendants' negligence when the release was signed.

Having determined the general rule, we go on to analyze the means a party may use to avoid the harshness of the rule concerning the effect of the release of the original tortfeasor. A party may avoid a release if the physician's negligence did not merely aggravate the original injury, but, instead, created a separate and distinct injury. *Kolar v. Ray*, 142 Ill. App. 3d 912, 492 N.E.2d 899; *Anderson v. Martzke* (1970), 131 Ill. App. 2d 61, 266 N.E.2d 137.

■ Because they raised the release as an affirmative defense, defendants here carried the initial burden of production on the existence of a release which is legal and binding on its face. (*Davis v. Hoeffken Brothers, Inc.* (1965), 60 Ill. App. 2d 139, 208 N.E.2d 370; *Judd v. Illinois Central R.R.* (1965), 58 Ill. App. 2d 47, 206 N.E.2d 525 (abstract of opinion).) A presumption of the release's validity is created because the release was under seal and recited it was in exchange for good and valuable consideration. *Artoe v. Navajo Freight Lines, Inc.* (1978), 65 Ill. App. 3d 119, 382 N.E.2d 492; *Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 356 N.E.2d 639.

Without more, this would be sufficient to meet defendants' ultimate burden of proof on the affirmative defense. Plaintiff erroneously maintains that the burden was improperly shifted at this point.

■■ ■ Once defendants established the existence of a valid release, the burden of *production* shifted to plaintiff to prove the re-

lease was invalid by clear and convincing evidence. (*Aqua-Aerobic Systems, Inc. v. Ravitts* (1988), 166 Ill. App. 3d 168, 520 N.E.2d 67; *Scherer v. Ravenswood Hospital Medical Center* (1979), 70 Ill. App. 3d 939, 388 N.E.2d 1268; *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 387 N.E.2d 878.) Thus, once defendant has established the release as a *prima facie* defense, or after admission by the opposing party, if the opposing party wishes to avoid the release as a defense, the burden is on that opposing party to prove facts rendering it invalid or any matter which will avoid it. *Judd v. Illinois Central R.R.*, 58 Ill. App. 2d 47, 206 N.E.2d 525; see generally 76 C.J.S. *Release* §65, at 706 (1952).

Significantly, defendants do not have the burden of establishing the *absence* of any element which plaintiff relies on to avoid the release. *Scherer v. Ravenswood Hospital Medical Center*, 70 Ill. App. 3d 939, 388 N.E.2d 1268; *Meyer v. Murray*, 70 Ill. App. 3d 106, 387 N.E.2d 878.

Plaintiff here attempted to avoid the release, arguing before the trial court that the injuries sustained as a result of defendants' negligence were separate and distinct from the injuries sustained in the car accident.

Plaintiff asserted enough facts to convince the trial court to permit plaintiff to produce evidence at trial before a jury on this issue, thus withstanding defendants' two motions to dismiss, motion for summary judgment, and motion for a directed verdict after plaintiff's opening statement before the jury at trial.

Plaintiff then failed, however, to carry his burden of *production* at trial. He failed to introduce evidence tending to show that the injuries were separate and distinct. There was no evidence, if believed by the jury, which would have authorized a finding in favor of plaintiff on the issue of separate and distinct injury.

Seven physicians testified in plaintiff's case in chief on this issue. The expert witnesses, Drs. Yaslow, Silverstein and Noble, testified that the hip injury occurred at the time of the February 1978 car accident. The treating physician, Dr. Kanter, testified similarly. Defendants' expert, who was called by plaintiff, Dr. Sheinkop, agreed with this medical opinion. The two defendant physicians also testified as adverse witnesses for plaintiff that the hip was injured in the car accident.

The expert witnesses testified further for plaintiff that the hip injury was the result of a "classic" dashboard injury where the knee struck the dashboard or steering wheel with such force that the femur moved upwards into the hip joint, resulting in a fracture dislocation.

Similarly, the avascular necrosis or deterioration resulted from the original injury.

Plaintiff maintains that a new injury was created in March 1987 when he stood up at home, felt sharp pain and fell against an end table. No expert evidence was presented on this. Dr. Sheinkop, testifying as an adverse witness for plaintiff, testified that it was not medically possible. Plaintiff himself could not even remember telling the physical therapist about the minor incident. Moreover, all medical opinions offered by plaintiff at trial established that the hip injury occurred at the time of the accident, not the next month when plaintiff stood up at home.

■■ ■ The jury could not reasonably come to a conclusion different than that of the seven doctors whom plaintiff called to testify on this medical causation issue, as the issue required expert testimony since it was beyond the understanding of laypersons. (See *Piano v. Davison* (1987), 157 Ill. App. 3d 649, 675, 510 N.E.2d 1066.) All of the evidence presented by plaintiff, and any reasonable inference drawn therefrom, established that the defendants' alleged negligence merely aggravated the original injury. Plaintiff produced no evidence to suggest defendants created a separate and distinct injury. A verdict may properly be directed where plaintiff neglects to introduce any evidence to support his contentions. *Sherrod v. Brannock* (1978), 67 Ill. App. 3d 972, 385 N.E.2d 735; *Bailey v. City of Decatur* (1977), 49 Ill. App. 3d 751, 364 N.E.2d 613. See generally 76 C.J.S. *Release* §72(h), at 723-24 (1952).

Thus, defendants carried the burden of production and persuasion on the affirmative defense, and a directed verdict in their favor was proper.

■■ Plaintiff next points out that the intent of the parties to the release controls the scope of the release. (*Kolar v. Ray*, 142 Ill. App. 3d 912, 492 N.E.2d 899.) We look to the release itself, and if it is clear and explicit, we must enforce it as written. (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 472 N.E.2d 791.) The release here clearly states that plaintiff releases Carpenter and "all other persons *** from all claims, demands, actions and causes of action, damages ***, injuries, whether known or unknown *** resulting or to result from the occurrence" on February 28, 1978. In *Rakowski v. Lucente*, and in *Kolar v. Ray*, we found similar language to be precise and unambiguous.

Plaintiff contends that at the time he executed the release, he did not know that defendants had been negligent. This argument is not supported by the record which plaintiff has presented to this court.

Plaintiff executed the release on March 4, 1982. The next day, plaintiff's counsel notified the court that the case was settled.

Five days earlier, on February 27, 1982, Dr. Kanter wrote to plaintiff's counsel that X rays showed severe degeneration of the hip joint and "healed posterior fracture-dislocation of the left hip with subsequent reduction, avascular necrosis of the femoral head and destruction of the entire hip joint." Dr. Kanter concluded: "I feel there is no question that this problem as it exists at present is related to the trauma that he described. The laceration of the left knee resulted in a fracture-dislocation of the left hip, which has gone on to the problem that he demonstrates at present."

Notably, this letter was stamped "received" by plaintiff's counsel on March 2, 1982, two days before the release was signed.

■■ Plaintiff's original and first amended complaints allege he discovered defendants' negligence on February 22, 1982, almost two weeks before signing the release. His sworn answers to interrogatories state that he discovered defendants' allegedly negligent failure to diagnose the hip injury on February 27, 1982, five days before he signed the release. Plaintiff admitted in his own testimony at trial that Dr. Kanter informed him of the hip injury on February 27, 1982.

It was not until plaintiff's second amended complaint was filed that he belatedly changed the date of discovery to May 3, 1982, the day before filing suit against defendants here.

In light of these facts, plaintiff's assertion that he did not know about the hip injury when he executed the release is completely without merit.

■■ Plaintiff finally contends that the trial court erred in not letting him make an offer of proof. The purpose of an offer of proof is to inform the trial court, counsel and the reviewing court of the nature and substance of evidence sought to be introduced. (*Volvo of America Corp. v. Gibson* (1980), 83 Ill. App. 3d 487, 404 N.E.2d 406.) Plaintiff did not know what Dr. Sheinkop might answer. His brief admits he was "simply attempting to ascertain whether Dr. Sheinkop would once again change his opinion." This is not a permissible use of an offer of proof. See *First National Bank v. Porter* (1983), 114 Ill. App. 3d 1, 448 N.E.2d 256; *Schmitt v. Chicago Transit Authority* (1962), 34 Ill. App. 2d 67, 179 N.E.2d 838.

■■ On redirect examination, Dr. Sheinkop testified that falling against a table could not produce the hip injury. "[T]he nature of the injury was such [that] it would have to have taken a more violent trauma than is described in the physical therapy notes of March 17, 1978." The substance of Dr. Sheinkop's testimony was before the

court. (*Tolefree v. March* (1981), 99 Ill. App. 3d 1011, 425 N.E.2d 1247; *Lindley v. St. Mary's Hospital* (1980), 85 Ill. App. 3d 559, 406 N.E.2d 952.) The question which plaintiff's counsel sought to have answered by Dr. Sheinkop had already been answered, and the answer was not in plaintiff's favor. Moreover, plaintiff had the opportunity to question Dr. Sheinkop about the physical therapy notes when he deposed him prior to trial. Plaintiff could not wait until trial to depose Dr. Sheinkop in chambers under the guise of making an offer of proof to find out if he could weaken Dr. Sheinkop's opinion that the fall against the table was medically insignificant. We find no error in the court's ruling.

Finally, plaintiff's notice of appeal states he is appealing from the jury verdict in favor of defendant Dr. Hamilton on the issue of the negligence in treating the knee injury. That issue is not addressed by plaintiff in his brief, and thus, we will not address the issue.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.