No. 1-01-1307 FIRST DIVISION

May 27, 2003

JOAN MORUS, Indiv. and as Adm'r of the Estate
 ) Appeal from the 

of Frank Morus, Deceased, ) Circuit Court of

) Cook County.

Plaintiff-Appellee, ) 

)

v. ) No. 96 L 12551

) 

GEORGE KAPUSTA, ) The Honorable

) Richard J. Elrod,

Defendant-Appellant. ) Judge Presiding.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Following a jury trial,
(footnote: 1) the trial court entered judgment on the jury's general verdict in favor of plaintiff Joan Morus (plaintiff) 
as against defendant Dr. George Kapusta (defendant) in the amount of $1.5 million, with respect to the death of decedent Frank Morus (Morus) upon elective gall bladder surgery performed by defendant.
(footnote: 2)  Defendant filed a posttrial motion seeking judgment notwithstanding the verdict or, in the alternative, a new trial.  The trial court denied this motion.  Defendant now appeals, asking that we reverse the judgment of the trial court and enter judgment in his favor or, in the alternative, that we remand the cause for a new trial.  For the following reasons, we affirm.

BACKGROUND

Decedent Morus, who had a history of congestive heart failure (CHF), was admitted to Christ Hospital in Oak Lawn, Illinois, on June 8, 1995.  Initially, he was suffering from swollen legs, a breakdown in his skin and infection.  While in the hospital, Morus developed gastric problems, including nausea.  It was determined that he was suffering from cholecystitis (diseased gall bladder), and elective cholecystectomy surgery (gall bladder removal) was recommended and scheduled for June 30, 1995.  Defendant, a surgeon, was asked to give a surgical consultation, and he agreed with this recommendation.

Upon Morus' admission on June 8, 1995, he was diagnosed by several doctors as being in continued CHF.  Four portable chest X rays were taken between June 8 and 13, 1995, and each revealed that Morus had the major symptoms of CHF, including an enlarged heart, pulmonary congestion and bilateral pleural effusions (fluid accumulation in the spaces between the lungs and the chest walls).  A full chest X ray was never taken of Morus, nor was any other portable chest X ray taken between June 13 and 30, 1995, prior to the scheduled surgery.  

While in the hospital, Morus was taking a daily dose of aspirin in response to concerns regarding his medical history with respect to strokes.  Morus continued taking aspirin every day until the day before the scheduled surgery.  Also, upon his admission to the hospital, Morus weighed 221 pounds.  He was placed on a diuretic, and his weight dropped to 215 pounds.  In the 8 days before the scheduled surgery, Morus gained 11 pounds.  

Defendant performed surgery on Morus on the scheduled date of June 30, 1995.  Defendant did not use a Swan-Ganz catheter or an arterial line during surgery to monitor Morus' heart and lung pressure.  The surgery was completed that afternoon, and Morus was taken to the general recovery room.  Defendant left the hospital.  While in the recovery room, Morus' blood pressure dropped and he began experiencing respiratory problems.  Morus was placed on a ventilator and was transferred to the surgical intensive care unit.  Morus then went into shock.  By 1 a.m. the next day (July 1, 1995), his pupils were dilated and he was nonresponsive in a comatose state.  Defendant received four telephone calls at several points throughout the night of June 30, 1995, from the on-call surgical resident describing Morus' condition and deterioration.  Defendant did not return to the hospital until some time later in the morning of July 1, 1995, between 6 a.m. and 7 a.m.  At 9 a.m., defendant and other doctors involved in Morus' care, as well as Morus' family, decided to remove Morus from the ventilator pursuant to his living will, and Morus died.  An autopsy revealed that Morus had an enlarged heart and pleural effusions consistent with CHF, and that he had bled internally.  The autopsy also showed that Morus had been suffering from renal failure.    

Plaintiff, Morus' wife, filed a complaint at law against defendant containing a survival count and a wrongful death count.  Plaintiff alleged that defendant violated preoperative, surgical and postoperative medical standards of care in treating Morus, and that defendant's negligence in one or more of these respects was a contributing and proximate cause of Morus' death.  
The case proceeded through discovery, and during a pretrial conference, plaintiff filed several motions 
in limine
.  One included a motion to preclude defendant from submitting any opinions concerning Morus' life expectancy other than that he would not have been expected to live "more than an additional five years."  After discussing this with the parties, the trial court granted plaintiff's motion 
in limine
, and stated that the experts' opinions as to Morus' life expectancy would be subject to cross-examination during trial.  Later, during a jury instruction conference prior to trial, the court and the parties again discussed Morus' life expectancy.  Plaintiff presented an instruction utilizing life expectancy tables, but the court and the parties agreed that the information contained in the tables was not applicable to the instant case based on the evidence that would be presented with respect to Morus' particular life expectancy.  A discussion then ensued as to whether the language of the instruction to be presented to the jury should be that Morus would have lived "no longer than five more years" or, rather, that he would have lived "approximately five more years."  The trial court concluded that the instruction on Morus' life expectancy should read that he would have lived approximately five years, and stated that this instruction would be revisited later during the trial, "when it comes to [a] more specific 
[time] [
sic
]."  Before trial had begun, the court read this instruction to the jury.  The cause then proceeded to trial.  

[Unpublishable material under Supreme Court Rule 23 removed here]

Plaintiff presented the expert testimony of Dr. Patrick Sullivan, an internist.  Dr. Sullivan opined that defendant breached the standard of care in clearing Morus for surgery, in performing the surgery and in his conduct after the surgery was completed.  Dr. Sullivan stated that these breaches were a "contributing and proximate cause" of Morus' death the day after surgery.

[Unpublishable material under Supreme Court Rule 23 removed here]

Dr. Sullivan testified as to his opinion with respect to Morus' life expectancy.  When asked how long Morus would have lived had the surgery not been performed on June 30, 1995, Dr. Sullivan responded "I believe probably five years."  Dr. Sullivan stated that the basis for his opinion was "[j]ust a general survival of patients like [Morus] with the diseases he had."  Dr. Sullivan was also asked whether the fact that Morus had a living will indicating he had no desire to be put on dialysis or other life-saving treatments impacted his opinion.  Dr. Sullivan stated that this fact "didn't really enter into it."

At the close of plaintiff's case in chief, defendant moved for a directed verdict, asserting that plaintiff did not present sufficient evidence to show that any one of her four theories of negligence was the proximate cause of Morus' death.  The trial court denied defendant's motion.

[Unpublishable material under Supreme Court Rule 23 removed here]

Dr. Robert Caplan was called by codefendant Dr. Ann Brennan 
as an expert witness and his evidence deposition was entered into the record at trial.  Dr. Caplan reviewed the depositions of several doctors in this cause, as well as Morus' autopsy report and his medical records.  Dr. Caplan provided opinion testimony with respect to Morus' medical condition, the effects of aspirin, and Morus' life expectancy. 

[Unpublishable material under Supreme Court Rule 23 removed here]

With respect to Morus' life expectancy, Dr. Caplan opined that the surgery Morus underwent was not an emergency procedure, and it was "more likely than not [Morus] would not have died the next day" if the surgery had not been performed.  Dr. Caplan testified that "[g]iven the severity of his underlying disease states, [Morus'] life expectancy would be reduced, below that of an individual who did not have these disease states, and, as a rough estimate, another five years might be a reasonable projection."

In addition to these expert witnesses, several members of Morus' family testified at trial, including plaintiff and Morus' children.  They stated that in accordance with his living will, Morus had expressed to them that he did not want to be connected to machines necessary to keep him alive, such as a ventilator.  They also testified that Morus had expressed that he did not want to undergo dialysis, even if this was necessary to his survival.  

At the close of the testimony in this cause, the trial court again read the jury instructions to the jury, including the following with respect to Morus' life expectancy:

"If you find for the Plaintiff, Joan Morus[,] *** under the Wrongful Death Count, then in assessing damages, you may consider how long Frank Morus was likely to have lived.  The evidence shows that Frank Morus was likely to have lived approximately five years from the date of his death."

The jury returned a general verdict in favor of plaintiff and against defendant in the total amount of $1.5 million.  Defendant did not present the jury with any special interrogatories to determine on which of the four bases of negligence asserted by plaintiff the jury found defendant to have been negligent.  The jury's award was itemized as follows: $250,000 on the survival count ($250,000 for pain and suffering Morus experienced as a result of the injury, $0 for the reasonable expense of necessary medical care, and $0 for the reasonable expense of the funeral and burial); and $1,250,000 on the wrongful death count. 

ANALYSIS

[Unpublishable material under Supreme Court Rule 23 removed here]

 A.  Breaches of the Standard of Care and Proximate Cause

[Unpublishable material under Supreme Court Rule 23 removed here]

B.  Expert Testimony and Rule 213

[Unpublishable material under Supreme Court Rule 23 removed here]

C.  Jury Instruction on Life Expectancy

Defendant's third contention on appeal is that the trial court erred in instructing the jury with respect to Morus' life expectancy.  The instruction given by the trial court now at issue in this cause was a modified version of Illinois Pattern Jury Instruction (IPI) 31.13 (IPI Civil (2000) No. 31.13), and stated the following:

 "If you find for the Plaintiff, Joan Morus[,] *** under the Wrongful Death Count, then in assessing damages, you may consider how long Frank Morus was likely to have lived.  The evidence shows that Frank Morus was likely to have lived approximately five years from the date of his death."

Defendant claims that the evidence presented at trial was in conflict as to what Morus' life expectancy was likely to be and, therefore, did not support the instruction given by the trial court which, in essence, directed a verdict for plaintiff.  In response, plaintiff asserts that defendant waived this argument because he did not object to the instruction when it was first read to the jury by the court before trial began.  Plaintiff also argues that, even if the issue were not waived, the instruction was proper because the evidence regarding life expectancy was "undisputed."  Based on the record before us, we agree with plaintiff and find that the instruction as given by the trial court regarding Morus' life expectancy was warranted.

First, with respect to plaintiff's contention of waiver, we conclude that defendant did not waive this issue for review.  A party waives its right to challenge a jury instruction that was given at trial when it fails to make a specific objection to the instruction during the jury instruction conference and fails to tender a remedial instruction to the trial court.  See 
Deal v. Byford
, 127 Ill. 2d 192, 202-03 (1989) (party challenging instruction must specify defect and submit instruction that states the law for which he argues on appeal); accord 
Branum v. Slezak Construction Co.
, 289 Ill. App. 3d 948, 956-57 (1997).  This timely objection and submission are to assist the trial court by affording it the opportunity to correct the defective instruction, and to prohibit the challenging party from gaining an advantage by obtaining a reversal based on his own failure to act.  See 
Dean v. Keith's & Ralph's Tavern, Inc.
, 25 Ill. App. 3d 970, 972 (1975).  

The record in the instant case demonstrates that defendant did not waive his right to challenge the life expectancy instruction given by the trial court.  It is clear that this instruction was a central topic of debate among the parties and the trial court at several junctures throughout the trial process
.  The first time life expectancy was discussed was during a hearing on plaintiff's motion 
in limine
, during which plaintiff asked the court to preclude any opinions concerning Morus' life expectancy other than the opinion that he would not have been expected to live more than an additional five years from the date of his death.  The court granted plaintiff's motion, but only upon two caveats: (1) that an opinion that Morus would have lived a shorter time, for example, 4 years and 11 months, was close enough to "not more than 5 years" and would be allowed into evidence; and (2) that defendant would be allowed to cross-examine Dr. Sullivan, the only witness present at trial who would be testifying as to life expectancy, with respect to his previously disclosed opinion that Morus would have lived approximately five more years.  Then, after this hearing, the first of two jury instruction conferences in the instant case took place, before trial had even begun.  As the parties discussed what instruction should be given as to Morus' life expectancy, the trial court stated that it should read that Morus was "likely to have lived approximately five years from the date of his death."  Noting that there was a dispute, codefendant Debre's counsel responded "[m]aybe we should just not say anything about the years until the end of the case."  The court then stated, "[p]ut down approximately five years.  I don't know how that hurts.  We'll change it when it comes to [a] more specific [time] [
sic
]."  With this statement, the court informed the parties that the life expectancy instruction would be revisited before it would be given at the close of evidence.  The court then gave this instruction to the jury before opening statements.

At the end of trial but before the jury was charged, a second instruction conference was held.  Defendant specifically objected to the life expectancy instruction, noting that the evidence elicited at trial that Morus would have lived approximately five years was now in conflict, since testimony revealed that Morus was suffering from renal failure and had declared that he would not undergo dialysis.  Defendant also submitted an instruction to the court on this issue, retaining the first sentence of the instruction the trial court fashioned during the first conference, but omitting the second sentence that stated that Morus was likely to have lived approximately five years.  The trial court refused defendant's instruction and acknowledged that it would be instructing the jury with respect to a life expectancy of five years over defendant's objection.  

Based on these circumstances as found in the record, we conclude that defendant preserved this issue for review.  Defendant both specifically objected to the jury instruction at the second jury instruction conference and tendered a replacement instruction to the trial court.  See 
Deal
, 127 Ill. 2d at 202-03; 
Branum
, 289 Ill. App. 3d at 956-57.  The trial court was not deprived of an opportunity to correct the instruction, nor did defendant fail to act, thereby resulting in an advantage to him.  See 
Dean
, 25 Ill. App. 3d at 972.  

Plaintiff's argument that defendant was required to object to the instruction during the first jury conference before trial had begun, rather than the second conference which occurred after all the evidence was admitted, is unconvincing based on the circumstances of the instant case.  Plaintiff does not present any law to the effect that there is a requirement to object at such a preliminary stage in the trial process.  
The trial court stated during plaintiff's motion 
in limine
 that the experts' opinion that Morus would have lived five years would be subject to cross-examination during trial.  Later, at the first conference, codefendant's attorney, though perhaps not officially objecting, did raise a reservation as to the instruction with the trial court.  It was at this juncture that the court told the parties that the issue would be revisited later, when it became "more specific" to the cause at hand and after Dr. Sullivan had been cross-examined as to his opinion on life expectancy.  Thus, the court acknowledged that a new life expectancy instruction may be necessary and would be dealt with later, at the close of evidence.  It could reasonably be concluded, then, that the court lulled defendant into believing that another conference would be held at the close of evidence which would afford the parties a chance to again debate the life expectancy instruction.  This is in fact what occurred, and upon defendant's objection and tender of a substitute instruction, we find no reason to conclude that the issue is waived on appeal simply because defendant waited to officially raise his objection until the promised second jury conference.

Even if technically defendant did not properly preserve this issue for review, we nonetheless choose to address it here.  The circumstances and sequence of events surrounding the fashioning of the jury instruction in this case are unique, especially since the trial court decided to give the instruction before any evidence was presented and then held a second instruction conference after the close of evidence.  This warrants our review of this issue despite any technical waiver that may have occurred.  See 
Dillon v. Evanston Hospital
, 199 Ill. 2d 483, 504-05 (2002) (waiver rule is concept of administrative convenience only and does not limit jurisdiction of reviewing court, which may deem its responsibility to address certain issues to override such technical requirements).  However, while we address this issue on its merits, we nonetheless find that it does not compel reversal for the reasons discussed below.

The determination of whether to give a specific jury instruction is within the trial court's discretion, and we will not disturb that determination unless there was an abuse of that discretion.  See 
Trimble v. Olympic Tavern, Inc.
, 239 Ill. App. 3d 393, 401 (1993); 
Thompson v. MCA Distributing, Music Corp. of America
, 257 Ill. App. 3d 988, 991 (1994).  
The standard for determining whether such abuse occurred is whether the instructions given fairly stated the law without having prejudiced a party and depriving him of a fair trial.  See 
Dillon
, 199 Ill. 2d at 505, 507.  We will not order a reversal on the basis of an error in instructing the jury unless that error was of such magnitude as to mislead the jury.  See 
Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.
, 273 Ill. App. 3d 977, 988 (1995).

It is true that testimony offered by expert witnesses is to be judged by the same rules of weight and credibility applied to other witnesses, which are questions of fact for a jury.  See 
Cannell v. State Farm Fire & Casualty Co.
, 25 Ill. App. 3d 907, 912 (1975).  However, while a jury is free to disregard an expert's opinion or conclusion of fact on the basis of credibility considerations, it cannot disregard expert testimony when this testimony pertains to medical issues "beyond the understanding of a layperson."  
Piano v. Davison
, 157 Ill. App. 3d 649, 675 (1987) (jury is generally "not bound" to accept expert opinion on issue, but must do so when issue requires expert testimony, such as in medical malpractice cases); see 
Turney v. Ford Motor Co.
, 94 Ill. App. 3d 678, 685 (1981).  Thus, when an issue is presented in a cause of action for which the jury is not equipped to draw any conclusion without the assistance of expert testimony, the jury cannot "reasonably come to a conclusion different than that" of the expert, thereby ignoring the expert's conclusion and instead employing its own independent interpretation of the evidence to reach an ultimate conclusion on this issue.  
O'Keefe v. Greenwald
, 214 Ill. App. 3d 926, 936 (1991) (issue of causation of the plaintiff's injuries required expert testimony as it was beyond understanding of jury; thus, jury could not disregard concurring expert opinions of seven doctors who testified on medical causation issue nor could jury "reasonably come to a conclusion different than" this expert testimony); accord 
Piano
, 157 Ill. App. 3d at 675 (jury could not disregard expert witness's conclusion because medical issue in cause, which involved interpretation of X ray and CT scan, was beyond jury's understanding); see, 
e.g.
, 
Gauthier v. Westfall
, 266 Ill. App. 3d 213, 220-21 (1994) (patient's prognosis requires need for expert testimony and is outside realm of lay witness's competency)
; 
Mazzone v. Holmes
, 197 Ill. App. 3d 886, 899 (1990) (issues involving patient post-operative care requires expert testimony); 
Weekly v. Solomon
, 156 Ill. App. 3d 1011, 1017 (1987) (expert testimony, and consideration by jury thereof, is required with respect to issues of pre-operative care).  

Here, the trial court's instruction with respect to life expectancy was warranted and not in error.  It would not have been reasonable for the jury in the instant case to have refused to consider the medical expert testimony that Morus would probably live five more years in light of the unique circumstances presented.  See 
O'Keefe
, 214 Ill. App. 3d at 936.  Two witnesses provided a specific prognosis for Morus' life expectancy, an issue which required expert testimony because it was beyond the jury's understanding to determine how long Morus would have lived.  These witnesses were Dr. Sullivan, who was plaintiff's expert, and Dr. Caplan, who was an expert for the defense.  Although testifying for opposing parties, these experts came to the same conclusion, namely, that Morus was likely to have lived five years.  Because these experts provided necessary testimony on an issue for which the jury was not equipped to use its own interpretation, and because the experts' testimony converged to reach the same conclusion, we fail to see how the jury could reasonably have disregarded or abandoned the expert opinion that Morus was likely to have lived five years.  See 
O'Keefe
, 214 Ill. App. 3d at 936.  Therefore, the trial court's instruction to the jury reiterating this expert testimony was not an abuse of discretion but, rather, was warranted under the circumstances of the instant case.  

Defendant cites
 
Northern Trust Co. v. County of Cook
, 135 Ill. App. 3d 329 (1985), and 
Goodman v. Terminal R.R. Ass'n of St. Louis
, 68 Ill. App. 2d 80 (1966), along with IPI 31.13, for the proposition that jury instructions on life expectancy that are conclusive are improper and erroneous because they do not permit the jury to exercise their own "experience in the affairs of life" as the law requires.  
Northern Trust Co.
, 135 Ill. App. 3d at 333; 
Goodman
, 68 Ill. App. 3d at 95 ("[t]o require a jury to accept and be bound by a doctor's prediction of expectancy would deprive them of consideration of their own observation and experience with reference to such predictions"); IPI, Civil (2000) No. 31.13.  However, each of those cases, as well as the pattern instruction, involves life expectancy evidence given in the form of mortality tables, which provide only general statistical averages without focusing on the individual subject to whom that table is alleged to apply.  Neither case, nor the pattern instruction, includes a situation where, as here, the medical expert testimony converged and provided a specific prognosis based on the particular circumstances of the person whose life expectancy was at issue.  On this basis, the cases cited by defendant are inapplicable, and we find no error on the part of the trial court in giving the life expectancy instruction now challenged on appeal.

Alternatively, even were we to conclude that the trial court did err in giving the challenged instruction to the jury, a conclusion to which we do not subscribe, we find, based on the record, that such error would have been harmless.  See 
Nilsson v. NBD Bank of Illinois
, 313 Ill. App. 3d 751, 762 (1999) (court's decision whether to give jury instruction is subject to harmless error analysis).  The instruction stating that the evidence showed that Morus was likely to have lived approximately five years after his death which the court gave at the end of trial had already been read to the jury earlier, at the beginning of this cause before opening argument.  Also, defendant never submitted a proposed instruction to counter this five-year life expectancy estimate.  It is true that defendant tendered a different instruction during the second jury conference, along with his objection.  However, that proposed instruction merely reiterated the first sentence of the instruction given, stating only that the jury "could consider how long Frank Morus was likely to have lived," and omitted the second sentence referring to the converging medical expert testimony that was presented.  This proposed instruction would not have been appropriate because it omitted the five-year basis as agreed by the expert testimony at trial without providing any other definite number which was grounded in presented evidence.  As previously discussed, Morus' life expectancy was an issue beyond the understanding of the jury and required a medical basis couched in expert testimony.  Thus, it would not have been proper to leave the jury with nothing but its own interpretation to decide this issue.  See 
O'Keefe
, 214 Ill. App. 3d at 936.  

Moreover, we further note that, contrary to defendant's contention, the instruction as given by the trial court did not preclude defendant from arguing that Morus may have lived less than the five-year estimate established by the expert testimony.  In fact, defendant specifically argued in his closing argument to the jury that there were other factors in evidence which indicated that Morus would have lived less than five years.  For example, defendant stated: "[b]ut ladies and gentlemen, no matter what happened on June 30, 1995 based on the best of all possible prognosis of the five years, Frank Morus wouldn't be here with us today regardless, and you can decide whether he would have passed *** earlier."  Therefore, defendant was actually permitted to, and indeed, challenged this the five-year estimate without objection from plaintiff or interference from the trial court.  

D.  Compromised Verdict

[Unpublishable material under Supreme Court Rule 23 removed here]

Accordingly, we affirm the decision below.  The record shows that plaintiff presented ample medical expert testimony and evidence with respect to her four theories of negligence to support the jury's finding that one or more of defendant's breaches in the applicable standards of care involved in this case were a proximate cause of Morus' death.  While the trial court erroneously admitted Dr. Sullivan's opinion testimony about platelet transfusions in violation of Rule 213 (177 Ill. 2d R. 213), this error was harmless in view of the particular circumstances of this case and did not substantially prejudice defendant.  Moreover, the instruction given by the trial court with respect to Morus' life expectancy was based on the undisputed medical evaluations of both plaintiff's and defendants' experts as presented at trial, and thus, was warranted.  Finally, we find, based on the record, that the jury's failure to award damages for Morus' medical bills and funeral expenses did not constitute a compromise verdict.  

CONCLUSION

For the foregoing reasons, we affirm the holding of the trial court.

Affirmed.

McNULTY, and O'MALLEY, J.J., concur*.

FOOTNOTES
1:
Defendant presents four issues on appeal, dealing with proximate cause, expert testimony, jury instructions on life expectancy and compromise verdict.  Because our court is bound by administrative order of the Illinois Supreme Court limiting the length of our opinions to 20 pages, we have chosen to publish only that portion of our original 47-page Rule 23 decision discussing jury instructions on life expectancy and the pertinent facts involved therein.  See 166 Ill. 2d R. 23.  We do so because of the dearth of published opinions that compare, as we do, instructions as to life expectancy premised upon general mortality tables and instructions premised not upon mortality tables but on the specific medical prognosis of the life expectancy of a specific individual based upon his or her medical condition.  The complete Rule 23 decision can be found in the office of the clerk of this court.

2:
We note that this verdict was also entered against codefendant Dr. Michael Debre.  Dr. Debre appealed this decision to our court and that appeal was consolidated with the present appeal.  See 
Morus v. Kapusta
,
 
No. 1-01-1207 (April 17, 2002).  However, Dr. Debre and plaintiff entered into a settlement, and that appeal was dismissed.  We also note that the jury found no liability as to codefendant Dr. Ann Brennan.  Accordingly, our decision here pertains only to defendant Dr. Kapusta, as his case remains pending as a single appeal before our court.