BARBARA JANKY, Plaintiff-Appellant, v. DORIS PERRY, Defendant-Appellee.

Third District   No. 3—02—0632

Opinion filed September 25, 2003.

Michael T. Marincic, of Goldfine & Bowles, P.C., of Peoria, for appellant.

Timothy G. Shelton, of Hinshaw & Culbertson, of Chicago, and Stephen M. Morris, of Hinshaw & Culbertson, of Peoria, for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

The plaintiff, Barbara Janky, filed a negligence cause of action against the defendant, Doris Perry. Janky claimed that her shoulder was injured as the result of an automobile accident caused by Perry. A jury ruled in favor of Perry. Janky's motion for a judgment notwithstanding the verdict was denied. On appeal, Janky argues that the trial court erred by (1) allowing Perry's attorney to elicit testimony from Janky that she had complained of shoulder pain to her family doctor three or four years before the automobile accident occurred; and (2) denying her motion for a judgment notwithstanding the verdict. We affirm.

## BACKGROUND

The automobile accident at issue occurred on April 17, 1999. On that date, Janky was a passenger in a car driven by her husband. The Jankys' granddaughter was in the front passenger seat and Janky was in the backseat on the driver's side. While stopped at a traffic light, Janky leaned forward to talk to her granddaughter.

Perry was driving her car, which was stopped directly behind the Jankys' car. Perry testified that while stopped for the light, she reached down to the floor of her car to retrieve an object. When Perry bent over to retrieve the object, her foot slipped off the brake. Perry's car moved forward and struck the Jankys' car from behind. As a result of the collision, Janky's left shoulder struck the driver's seat in front of her.

Janky testified that when her shoulder struck the seat, she immediately felt pain from her shoulder down to her elbow. After the accident, Janky did not seek immediate medical attention. Instead, Janky and her husband took their granddaughter to visit the granddaughter's father. The Jankys then drove to their home.

The accident occurred on a Saturday. Janky stated that her

shoulder continued to hurt on Sunday. On Monday, her husband made an appointment for her with an orthopedist, Dr. Timothy J. Morgan.

During direct examination, the following exchange took place between Janky's lawyer and Janky:

"Q. *** Prior to this accident, did you have any problems with your left shoulder?

A. Well, I had pain[,] but it wasn't down in my shoulder. It was more up in here (Indicating) in my neck area.

* * *

Q. Now, how often[,] and we're still talking about before the accident, before April 17th of 1999, how often would you have this pain that you talked about in your left shoulder?

A. Not frequent at all, not frequent at all."

On cross-examination, Perry's attorney asked Janky, "You complained of pain in your shoulder to your family physician as early as March of 1995, didn't you?" Janky's attorney immediately asked to approach the bench, and a sidebar was held off the record. Following the sidebar, the judge stated for the record that Janky's objection was overruled. The nature of Janky's objection, however, is not preserved in the record.

The following exchange then took place between Perry's lawyer and Janky:

"Q. I had asked if isn't it correct that you made complaints of left shoulder pain to your family physician, Dr. Blair, as early as March of 1995?

A. I don't remember what, when it was, you know, what year it was or anything.

Q. Were you—do you remember making complaints to Dr. Blair?

A. Um-hum.

Q. About your left shoulder?

A. Yes.

Q. Do you remember telling him that you were in, that your left shoulder was very painful? Do you remember telling him that?

A. Yes.

Q. That was back in March or April of 1995? ·

A. I'm not sure when, when it was, the dates.

Q. But it was several years ago?

A. Yeah.

Q. Did you know that you had a rotator cuff tear at the time that you went to see Dr. Morgan?

A. No, I didn't.

Q. Was Dr. Morgan the first doctor that had told you that the rotator cuff was torn?

A. Yes.

Q. You understand that Dr. Morgan says that the rotator cuff tear predates the date of the accident with Miss Perry? You understand that?

A. Yes, I do. He didn't tell me that, but I know that now."

Later in the proceeding, Janky offered Morgan's testimony by way of an evidence deposition, which was read to the jury. Morgan stated that he first saw Janky on April 28, 1999. On that date, Janky told Morgan

"that she had had pain in the region of her left shoulder for several years, but that pain had recently worsened at the time of an automobile accident.

\* \* \*

As far as her shoulder was concerned, she stated that she had seen some other physicians but had not obtained any relief of her pain."

Morgan said that he initially ordered an X ray of Janky's shoulder. The X ray showed "degenerative changes in the form of mild spurring and narrowing of the acromioclavicular joint." Morgan testified that the acromioclavicular joint is "the small joint where the collarbone articulates with the shoulder bone on top of the shoulder." He said that a portion of the rotator cuff is located under that joint. Morgan gave Janky a cortisone injection in an attempt to relieve the inflammation and pain in her shoulder.

When Morgan saw Janky again on May 10, 1999, Janky told the doctor that the cortisone injection had not significantly reduced her pain. Morgan said that Janky "stated that she had also had some pain in the region of her neck which she also felt may have worsened since the motor vehicle accident."

Morgan then ordered a magnetic resonance image (MRI) of Janky's shoulder. The MRI "revealed evidence of a large tear of the rotator cuff, \*\*\* retraction" of a tendon, "wasting" of a muscle, and other "degenerative changes" in her shoulder. The doctor stated that the degenerative changes were likely to have been present prior to the car accident.

Morgan recommended surgery to repair Janky's shoulder condition and physical therapy to strengthen the muscles around the injury. He stated that, within a reasonable degree of medical certainty, the car accident had aggravated Janky's previously existing shoulder condition.

After the evidence was presented, the trial judge directed a verdict in favor of Janky on the issue of negligence. He instructed the jurors that they still were to decide if Perry's negligence proximately caused Janky's injury and, if so, to determine Janky's damages. The jury returned a verdict in favor of Perry.

Janky moved for a judgment notwithstanding the verdict. In her motion, Janky argued that (1) the verdict was against the manifest weight of the evidence; and (2) the court erred by allowing testimony regarding Janky's prior medical treatment. The motion was denied and Janky appealed.

## ANALYSIS

### I. Janky's Testimony Concerning Previously Having Sought Medical Treatment

Janky contends that the trial court erred by permitting Perry's lawyer to elicit testimony from Janky concerning previously having sought medical treatment for her shoulder. For this proposition, Janky cites *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49, 733 N.E.2d 1275 (2000).

■ We review evidentiary rulings for an abuse of the trial court's discretion. An appellate court may find an abuse of discretion only where no reasonable person would take the view adopted by the trial court. *Valentino v. Hilquist*, 337 Ill. App. 3d 461, 785 N.E.2d 891 (2003).

■ In *Voykin*, the plaintiff suffered injuries to his neck and back in a car accident caused by the defendant. At trial, the defendant sought to introduce evidence that approximately five years before the accident, the plaintiff suffered an injury to his lower back. The trial court admitted the evidence, but the appellate court reversed. The Illinois Supreme Court upheld the appellate court's reversal. The *Voykin* court ruled, in part, that when a defendant seeks to introduce evidence of the plaintiff's prior injury to the same part of the body, the defendant must first introduce expert testimony concerning the relevance of the evidence with respect to the proximate cause element of negligence. *Voykin*, 192 Ill. 2d 49, 733 N.E.2d 1275.

In this case, Janky argues that the trial court erred, under the rule of *Voykin*, by allowing Perry's attorney to question Janky concerning previously seeking medical attention for her shoulder pain without having first introduced expert testimony concerning causation. We disagree.

The rule of *Voykin* applies when a defendant seeks to introduce evidence of a prior injury to the same part of the body. However, in this case, the plaintiff, rather than the defendant, first introduced evidence of a prior injury to the same part of Janky's body. The first time Janky's lawyer asked Janky about her previous shoulder pain, Janky said that it was more of a pain in the area of her neck. The second time Janky's attorney asked about her previous shoulder pain, Janky said that she had previously experienced the pain, but infrequently.

■ The subject of Janky's previous shoulder pain having been raised on direct examination, Perry's attorney then pursued the matter on cross-examination. Later in the proceeding, Janky introduced Morgan's testimony that Janky previously had sought medical attention for her shoulder and neck pain. Morgan also stated his medical opinion that her shoulder condition predated the car accident.

Because Janky's attorney opened the door on the subject of her preexisting injury and later introduced testimony from her treating physician concerning this injury, we find the holding of *Voykin* to be inapplicable to the present case. Thus, the trial court did not abuse its discretion by allowing Perry's attorney to question Janky concerning previously seeking medical attention for her shoulder.

## II. Judgment Notwithstanding the Verdict

Janky argues that the trial court erred by denying her motion for a judgment notwithstanding the verdict.

■ A judgment notwithstanding the verdict is to be entered only when the evidence, taken in the light most favorable to the nonmovant, so overwhelmingly favors the movant that no contrary verdict could stand. When reviewing a trial court's ruling on such a motion, an appellate court cannot substitute its judgment on questions of fact tried by the jury. We apply a *de novo* standard of review concerning rulings on motions for judgments notwithstanding the verdict. *Morus v. Kapusta*, 339 Ill. App. 3d 483, 791 N.E.2d 147 (2003).

■ In the instant case, taking the evidence in the light most favorable to Perry, we cannot say that the evidence so overwhelmingly favored Janky that the verdict in favor of Perry cannot stand. The evidence showed that Janky's shoulder injury predated the automobile accident by several years. Janky's own doctor testified, by evidence deposition, that the X ray and MRI showed several signs of preexisting degenerative changes in Janky's shoulder. Janky admitted that she had sought medical treatment for her shoulder several years before the accident.

Because of this evidence, a reasonable jury could have found that Perry's negligence was not the proximate cause of Janky's shoulder injury. Therefore, we hold as a matter of law that the trial court did not err by denying Janky's motion for a judgment notwithstanding the verdict.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Peoria

County circuit court denying Janky's motion for a judgment notwithstanding the verdict.

Affirmed.

LYTTON, J., concurs.

JUSTICE SCHMIDT, specially concurring:

I agree with the holding of the majority, but write separately to more fully address some issues regarding plaintiff's claim.

With respect to the *Voykin* issue, the majority correctly points out that it was the plaintiff who put on evidence of the prior shoulder pain and the preexisting torn rotator cuff. Additionally, I note that not only did the plaintiff put on this evidence, but the plaintiff sought damages for aggravation of a *preexisting* condition. *Voykin* is clearly not applicable.

Regarding plaintiff's demand for judgment notwithstanding the verdict, plaintiff argues that it is undisputed that her preexisting shoulder injury was aggravated by this accident. Plaintiff's expert, Timothy Morgan, M.D., made it clear that in his opinion, the torn rotator cuff was a chronic injury that preexisted the automobile accident. Plaintiff claims that her pain increased after the accident. Dr. Morgan testified that his opinion that this accident aggravated the pain in the plaintiff's left shoulder was based on her subjective complaints. He made this clear on redirect examination by plaintiff's attorney:

> "Q. Doctor, it remains your opinion that this accident aggravated Ms. Janky's rotator cuff injury?
>
> A. My opinion that it aggravated her pain is based on her telling me that."

It was therefore up to the jury to decide whether the plaintiff was a credible medical historian. The 12 jurors could have chosen to believe her or not. They obviously chose the latter.

Judgment notwithstanding the verdict is improper where reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented. *Pasquale v. Speed Products Engineering*, 166 Ill. 2d 337, 654 N.E.2d 1365 (1995). Judgment notwithstanding the verdict cannot be entered if there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome. *Maple v. Gustafson*, 151 Ill. 2d 445, 603 N.E.2d 508 (1992). In looking at the evidence adduced at trial, in the light

most favorable to the defendant, the jury could have concluded that the plaintiff was not credible.

(1) At trial, plaintiff first denied having prior shoulder pain and testified that the preexisting pain had only been in her neck. She later admitted that she had experienced shoulder pain prior to the automobile accident. (2) There was a dispute between plaintiff and the defendant regarding the nature and severity of the impact. (3) Plaintiff testified that she was leaning forward in the rear seat when her vehicle was struck from behind. She claims that the impact threw her left shoulder into the rear of the driver's seat in front of her. A reasonable jury might have questioned this based on life experiences. The jury might have found that it was more probable that, rather than being thrown forward from the rear impact, plaintiff would have been drawn back into her seat. (4) The plaintiff testified that, just prior to the accident, she had no idea that she had a preexisting torn rotator cuff or other permanent or chronic shoulder injury. The jury also could have doubted this in light of the fact that the first medical professional she saw after the accident was not a general practitioner or an emergency room physician, but an orthopedic surgeon.

Because the only evidence of either injury or the aggravation of a preexisting injury, according to plaintiff's own expert, was the plaintiff's subjective complaint of increased pain, we cannot say, as plaintiff urges, that the jury was required to accept her testimony at face value.